Appeal by plaintiff, Rose Barnett, from summary judgments in favor of defendants, Mobile County Personnel Board ("the Board"); Bernard M. Richardson, Jr., director of the Board; and John A. Gartman, mayor of the Town of Mount Vernon, Alabama, in plaintiff's defamation action arising out of an unauthorized payroll plan in Mount Vernon. We affirm.
Plaintiff was the town clerk of Mount Vernon from 1973 until 1982. As the town clerk, she had the primary responsibility for organizing and issuing the payroll for the town. Although in this position plaintiff acted under the direction of the mayor and town council, it was the Board that governed and controlled the town's employees, as it did all of Mobile County's public service employees in the "classified service." The Board's responsibilities included testing prospective employees, maintaining employment registers, and approving the payrolls of the local governments and agencies in Mobile County.
In order to grant a pay raise to a town employee, the town council of Mount Vernon had to initially approve the raise and then have the mayor submit the proposed action to the Board for final certification. The controversy in this case arises from the Board's discovery that its authority over payroll changes was being overridden in the town of Mount Vernon, and that the town employees were actually receiving all *Page 48 
of the pay raises proposed by the council that had been disapproved by the Board.
According to the plaintiff, Mayor Gartman initiated this scheme of granting pay raises in late 1976, soon after the elections that placed him and the town council in office for four-year terms. While the plaintiff admits to issuing the unauthorized paychecks and submitting falsified payroll reports to the Board, she maintained that she acted under the direction of the mayor, who, she said, instructed her to grant all of the pay raises and assured her that he would take care of any of the problems that might arise. Plaintiff also insisted that the town council was aware of her actions, yet both the mayor and the council denied any knowledge of the situation.
Three new members were elected to the five-member town council in October 1980. In January 1981, after the newly-elected chairman of the town council's finance committee, Ronald Middleton, asked the plaintiff for information regarding pay raises, she told him about the unauthorized payroll. Thereafter, Middleton contacted the director of the Board, Bernard Richardson, Jr., and revealed the town's practice of granting unauthorized pay raises. Richardson notified the mayor and the council that they would be held liable for any overpayments and that he would be taking the "necessary action" to recover the funds.
A meeting was held in Mount Vernon with the mayor, the town council, and the plaintiff present. The plaintiff contends that when she told the council that she had acted under the mayor's direction he then accused her of lying. She also stated that following this accusation, one of the council members reported at this same meeting that Mayor Gartman had told a town citizen that the plaintiff was keeping "two sets of books," one of them in secret. It is on the basis of these statements that the plaintiff based her defamation claim against Mayor Gartman.
Later, in the course of correspondence between the town council and the Board, the council requested that the Board formally approve the unauthorized pay raises that the town's employees had received, including one for the plaintiff. While the Board granted most of the raises, it denied the plaintiff's raise, stating the following in a letter from Richardson to the mayor and town council:
 "Action on the request for a two-step special merit increase for Rose Barnett, Town Clerk, is being held in abeyance until it is determined, through Court action or otherwise, where the responsibility lies as concerns the falsification of payrolls submitted to the Mobile County Personnel Department."
Upon an additional request to the Board to approve the plaintiff's raise, Richardson replied with the following letter to the mayor and members of the town council:
 "I am in receipt of your letter of April 15, 1981, concerning your request for a two-step merit increase for Mrs. Rose Barnett, Town Clerk. Please be advised that in my own personal telephone conversations with Mrs. Barnett concerning the violations that we are currently trying to adjudicate, she readily admitted that she submitted falsely fabricated payrolls to my Department knowing full well that such was a blatant violation of the Law. Mrs. Barnett contends that she submitted these payrolls at the instruction of the Mayor and the Council. The Mayor and members of the Council to whom I have been able to speak have denied such allegation by Mrs. Barnett. If you now, as the current Mayor and Council, are willing to certify to me that Mrs. Barnett blatantly disobeyed the Law at your instruction, I will be glad to at least consider this matter, but in the absence of such certification from you, you must understand that we do not reward fraud with special merit increases." (Emphasis added.)
The plaintiff bases her defamation claim against Richardson on the last phrase of this letter.
Several weeks later, on May 12, 1981, Richardson and the Board filed an action against Rose Barnett and the members of the town council in their individual capacities in order to recover the payroll overpayments. However, since these plaintiffs *Page 49 
brought the action as taxpayers of Mobile County and in the name of the Town of Mount Vernon, the trial court dismissed the action for lack of standing, since none of the plaintiffs was a citizen of the town.
Several months later, the Board initiated its own investigation into this matter, including a full hearing with testimony from all parties involved. This process culminated in a finding that Rose Barnett had knowingly engaged in a violation of the Board's laws and rules and that she had acted under the authorization of Mayor Gartman. Thereafter, the Board dismissed the plaintiff from her position as town clerk, yet recognized that it had no jurisdiction over an elected official such as the mayor. Barnett appealed her dismissal to the circuit court, but the court affirmed the dismissal order in August 1986.
In the meantime, the plaintiff had filed this present defamation action on July 16, 1981, naming Richardson, the Mobile County Personnel Board, and Gartman as defendants. Later, she attempted to amend the style of her complaint by adding to the listing of defendants the names of four individual members of the Board. On November 17, 1986, the trial court granted summary judgments in favor of all of the original defendants. The four individual members of the Board did not file a separate motion for summary judgment, and the trial court did not expressly include their names in its orders. This appeal followed.
As a threshold issue, we must determine which of the defendants are properly before this Court. The plaintiff's original complaint named Richardson, the Board, and Gartman as defendants:
"ROSE BARNETT, Plaintiff
"-vs-
 "BERNARD M. RICHARDSON, JR.; THE PERSONNEL BOARD OF MOBILE COUNTY; JOHN A. GARTMAN, Defendants
"FIRST CAUSE OF ACTION
 "1. Beginning in April of 1981 the Defendant, Bernard M. Richardson, Jr., individually and acting within the line and scope of his employment as Personnel Director of the Personnel Board of Mobile County and John A. Gartman, maliciously slandered the Plaintiff on several occasions by accusing the Plaintiff of submitting falsely fabricated payrolls thereby implying that the Plaintiff was guilty of theft or embezzlement.
 "2. As a proximate result of the Defendants' malicious and slanderous remarks the Plaintiff's reputation has been severely and irreparably damaged.
 "WHEREFORE, Plaintiff demands judgment against Defendants, separately and severally, in the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS, plus interest and costs."
Later, on September 28, 1981, the plaintiff filed the following pleading:
"AMENDED COMPLAINT
 "Comes now the Plaintiff in the above styled cause and amends the style of her complaint
heretofore filed as follows:
"ROSE BARNETT, Plaintiff
"-vs-
 "JOHN A. GARTMAN, THE PERSONNEL BOARD OF MOBILE COUNTY; BERNARD M. RICHARDSON, JR., ERNEST A. ROUSE; H. CONRAD FREEMAN; JAMES K. HUFFSTUTLER; EDITH C. VAUGHAN, Defendants
"CIVIL ACTION NO. CV-81-001638"
(Emphasis added.) While this pleading purports to amend the complaint by adding the four individual members of the Board, we must examine it to determine whether it is adequate to achieve its desired effect. We recognize at the outset that this is a confusing pleading and that it acts not through addition, but through substitution. The plaintiff has added no additional claims in this pleading, but has merely replaced the former style, or caption, with the amended one. We discussed the impact of an amended pleading in Zeigler v. Baker,344 So.2d 761 (Ala. 1977):
 "An amended pleading pro tanto supersedes a pleading which it amends, United States v. L.D. Caulk Co. (D.C.Del.), 114 F. Supp. 939 (1953). . . . The liberalized rules of procedure have not eliminated *Page 50 
pleadings as the principal means by which parties themselves choose the issues which they wish to litigate. When pleading to amendments, counsel should see that their pleadings incorporate grounds or allegations previously pleaded if they wish to rely upon them, e.g., 'comes the defendant and amends his answer to plaintiff's complaint by adding the following . . .' etc."
344 So.2d at 763.
How are we to construe this pleading in which the plaintiff attempts to add these four defendants? While we recognize that the plaintiff has successfully amended her caption, we agree with the statement of the Ninth Circuit Court of Appeals inHoffman v. Halden, 268 F.2d 280 (9th Cir. 1959), regarding the limited function of the introductory caption, or style, of a case:
 "The caption of an action is only the handle to identify it and ordinarily the determination of whether or not a defendant is properly in the case hinges upon the allegations in the body of the complaint and not upon his inclusion in the caption."
(Emphasis added.) 268 F.2d at 303. This view is in accord with that of Wright and Miller, who state that "[a]lthough helpful to the court, the caption usually is not considered a part of the pleader's statement of claim or response and is not determinative as to the parties to the action." 5 C. Wright 
A. Miller, Federal Practice Procedure § 1321 at 458-59, n. 6 (1969).
Indeed, we must look to the allegations in the body of the complaint in order to determine the nature of the plaintiff's cause of action. Blanchard v. Terry Wright, Inc.,331 F.2d 467 (6th Cir.), cert. denied, 379 U.S. 831, 85 S.Ct. 62,13 L.Ed.2d 40 (1964). Even if we were to conclude that the "amended complaint" was successful in making these four individuals defendants in this action, the plaintiff has made no demand on these members of the Board in her complaint, and there are no allegations of misconduct on their part. If it was her intention to state a claim against them, there is certainly no indication of that intent anywhere in the record. Therefore, we conclude that the individual members of the Board, other than Richardson, were not properly joined as defendants.
We now turn to the merits of this defamation action. The principles that govern our review of a summary judgment are well settled:
 " 'A motion for summary judgment may be granted only when there is no genuine issue as to a material fact and the movant is entitled to judgment as a matter of law. [Citation omitted.]
 " 'The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." [Citation omitted.]
 " 'Likewise, we consider the "Scintilla Rule" in connection with summary judgment [in this case]. . . . [I]f there is a scintilla of evidence produced in plaintiff's favor on the issue of defendant's negligence, then summary judgment will not lie. . . .' "
Fulton v. Advertiser Co., 388 So.2d 533, 538 (Ala. 1980), quoting Loveless v. Graddick, 295 Ala. 142, 147, 325 So.2d 137,141 (1975).
Even though no affidavits were filed by the plaintiff in opposition to the defendants' motions for summary judgment here, the trial court nevertheless had to consider
 " 'any material that would be admissible at trial and all evidence of record as well as material submitted in support of or in opposition to the motion when ruling on [the] motion for summary judgment. Morris v. Morris, 366 So.2d 676 (Ala. 1978). See also, 10 C. Wright A. Miller, Federal Practice and Procedure, § 2721 (1973). . . . [A]ll evidence of record, as well as that evidence formally submitted in support of or in opposition to a motion for summary judgment, should be considered in ruling on the motion.'
 "Fountain v. Phillips, 404 So.2d 614, 618 (Ala. 1981). Accord Speigle v. Lott, 423 So.2d 163 (Ala. 1982)." *Page 51 
Braswell Wood Co. v. Fussell, 474 So.2d 67, 70 (Ala. 1985).
Thus, we turn to the propriety of the summary judgment in favor of Richardson and Gartman. We will examine each of the these claims separately.
The defamation claim against Richardson is based on his letter of April 20, 1981, in which he stated that the Board does not "reward fraud with special merit increases." The plaintiff argues that this statement supports a claim of defamation and that the summary judgment for Richardson was improper. On the other hand, Richardson contends that any allegedly defamatory statements contained in that letter are protected by an absolute privilege, because he says, the subject matter of the letter related to a proposed judicial proceeding, namely, the action filed by Richardson and the Board against Ms. Barnett and the members of the town council in order to recover the payroll overpayments. In arguing the issue of absolute privilege, Richardson relies on the case ofWalker v. Majors, 496 So.2d 726 (Ala. 1986). In Walker, the owner of a parcel of land brought a defamation action against a real estate broker for allegedly defamatory remarks in a letter that the broker had written to some prospective purchasers of the land. The broker wrote these letters after the owners refused to sell the property and pay him his commission. In his letters, the broker stated: " 'I am filing suit against the Walkers for the breach of their contract with me and to recover for the damages I have suffered as a result of their fraudulentconduct.' " (Emphasis added in Walker.) Shortly after writing these letters, the broker filed suit against the Walkers for breach of contract and fraud.
In affirming the summary judgment for the broker, we adopted the Restatement (Second) of Torts, § 587 (1977), as the appropriate standard when determining whether defamatory matter is absolutely privileged by virtue of its connection with a judicial proceeding:
 "A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."
(Emphasis added.) We continued, in the Walker case, to examine the rationale behind this privilege:
 " ' "There is another class of privileged communications where the privilege is absolute. They are defined in Hastings v. Lusk, 22 Wend. [N.Y.] 410, 34 Am.Dec. 330. In this class are included slanderous statements made by parties, counsel, or witnesses in the course of judicial proceedings, and . . . libelous charges in pleadings, affidavits, or other papers used in the course of the prosecution or defense of an action. In questions falling within this absolute privilege the question of malice has no place. However malicious the intent, or however false the charge may have been, the law, from considerations of public policy, and to secure the unembarrassed and efficient administration of justice, denies to the defamed party any remedy through an action for libel or slander. This privilege, however, is not a license which protects every slanderous publication or statement made in the course of judicial proceedings. It extends only to such matters as are relevant or material to the litigation, or, at least, it does not protect slanderous imputations plainly irrelevant and impertinent, voluntarily made, and which the party making them could not reasonably have supposed to be relevant.' "
 "O'Barr v. Feist, 292 Ala. [440] at 446, 296 So.2d [152] at 157 [1974], quoting Moore v. Manufacturers' National Bank, 123 N.Y. 420, 25 N.E. 1048, 1049 (1890).
 "Comment (e) to Restatement § 587 (regarding statements made preliminary to trial) states: *Page 52 
" 'As to communications preliminary to the proposed judicial proceeding, the rule stated in this section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for a defamation when the possibility is not seriously considered.' "
496 So.2d at 729.
It is clear under the facts of the present case that a judicial proceeding was not only "under serious consideration," but was actually in the planning stages. In the letter of April 20, Richardson refers to the payroll violations that the Board was "currently trying to adjudicate." Three weeks later, Richardson and the Board filed a civil action to recover the payroll overpayments. While this suit was later dismissed, the allegedly defamatory letter was clearly relevant to the proposed proceeding. While the "issue of the relevancy of the communication is a matter for the determination of the court, . . . the adjudicated cases have established a liberal view in the interpretation of the language used, and all doubts are resolved in favor of its relevancy or pertinence" to the judicial proceeding in question. Walker, supra, 496 So.2d at 730, citing O'Barr v. Feist, 292 Ala. 440, 296 So.2d 152
(1974).
We acknowledge that the circumstances of this particular case may delineate the limits of the area in which we would be willing to recognize the existence of an absolute privilege for communications preliminary to a judicial proceeding. We recognize, as did the court in Brown v. Collins, 402 F.2d 209
(D.C. Cir. 1968), the need for caution in the granting of absolute privilege to preliminary statements:
 "The doctrine of absolute immunity for statements in judicial proceedings reflects a judgment that the need for completely free speech for litigants is dominant, and that this freedom is not to be endangered by subjecting parties to the burden of defending their motives in subsequent slander litigation, or to the risk that juries may misapprehend those motives. Such special immunity is not lightly conferred, however, as it protects deliberate lies told with intent to destroy reputation. Where dealing with preliminary statements other than witness briefings, settlement discussions and the like, there is need for particularly close attention to the factual circumstances, recognizing that unlike statements made in court, these communications are not cabined by a litigant's recognition that contempt of a court may follow if they are outrageously unnecessary and intemperate, even though more or less relevant.
 ". . . Business conversations are not absolutely privileged merely because they deal with matters likely to end up in court in the future. . . . Although the Restatement standard of 'relation' to the proceedings is broad, and does not require legal relevance, even that liberal standard is not met merely by showing that the defamatory comments were triggered by some pending lawsuit or the facts involved therein. . . . . [T]he mere mention of the possibility of suing the communicant [does not] automatically convert the entire conversation to one 'related' to a proposed judicial proceeding."
402 F.2d at 213-14. (Footnotes omitted.)
Nevertheless, under the facts of this case, we hold that Richardson's allegedly defamatory letter was absolutely privileged due to its clear relevance to a judicial proceeding that was "contemplated in good faith and under serious consideration." Restatement (Second) of Torts, § 587, comment (e) (1977). Therefore, we affirm summary judgment for Richardson.
Turning to the claims against Gartman, we first examine the accusation of lying, which Gartman allegedly made against the plaintiff in a meeting with several of the town council members. During this investigatory meeting, when the plaintiff attempted to explain her method of preparing the payroll under the direction of Mayor Gartman, Gartman allegedly accused her of falsifying the entire story. Gartman insists that he possessed a qualified privilege *Page 53 
to speak out on matters involving this public controversy over the handling of the town's payroll. Indeed, although silent as to the reasons for granting the summary judgments, the trial court may have based its decision on the existence of a conditional or qualified privilege protesting the mayor's speech.
The test for determining whether a qualified privilege exists is as follows:
 " ' "Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice. * * * The duty under which the party is privileged to make the communication need not be one having the force of legal obligation, but it is sufficient if it is social or moral in its nature and defendant in good faith believes he is acting in pursuance thereof, although in fact he is mistaken." '
 "Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117 (Ala. 1976), quoting Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290 (1923)."
Fulton v. Advertiser Co., 388 So.2d 533, 537 (Ala. 1980). (Emphasis added.)
This qualified privilege may arise in varying situations, including one in which the speaker of the allegedly defamatory matter makes the statement in order to protect his own interest or the interest of another in a matter in which both are concerned. The qualified privilege to protect one's interest is discussed at 53 C.J.S. Libel Slander, § 84, at 156 (1987):
 "Generally, any communication published by one in good faith to another, in order to protect his own interest or to protect the corresponding interest of another in the matter in which both are concerned, is privileged when the subject matter of the publication makes it reasonably necessary under the circumstances to accomplish the purpose desired.
 "So, a communication made by a person immediately concerned in interest in the subject matter to which it relates, for the purpose of protecting his own interest, in the full belief that the communication is true and without any malicious motive, is privileged, where the communication is made to one occupying a confidential relationship to the communicant or having a corresponding interest or duty, or to the public generally, provided such publication is necessary and proper in the protection of the defendant's interest.
 "However, if there is no valid interest that needs protection, or there is no common interest that entitles the publisher to publish the information to the particular individual, the statement is not protected by the qualified privilege.
 "Furthermore, since the privilege under consideration is merely a qualified one, it is subject to the general rules, discussed supra §§ 59-63, limiting qualified privileged communications; and there is no privilege where the communication is actuated by express or actual malice, and the privilege may be lost if the publication goes beyond what the occasion requires. In this connection, actual malice includes the concepts not only of spite, hatred, or vindictiveness, but also of such reckless disregard of the rights of another as to constitute the equivalent of ill will." (Footnotes omitted.) (Emphasis added.)
Thus, if Gartman's statements during the meeting with the plaintiff and members of the town council were motivated by a desire to protect his own interest, the statements would be protected by a qualified privilege. During this meeting, after the plaintiff told the council members that Gartman had instructed her to alter the payroll, he allegedly responded by accusing her of lying and by denying knowledge of her actions. If he responded in this manner in the belief that his statement was true, and without a malicious motive, he would be protected by a qualified privilege.
The key element in the law of qualified privilege is that the privilege is lost if the communication is made in bad faith or with malicious intent. Furthermore, *Page 54 
"[w]here a communication is conditionally privileged, it is free from the legal imputation of malice and is actionable only if there is actual malice." Willis v. Demopolis Nursing Home,Inc., 336 So.2d 1117, 1120 (Ala. 1976). The "actual malice" that a private party plaintiff must prove in order to defeat this qualified or conditional privilege is the traditional common law malice, and it must be distinguished from the "actual malice" required in defamation cases brought by public figures and public officials under New York Times Co. v.Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny. See Cousins v. T.G. Y. Stores Co.,514 So.2d 904 (Ala. 1987). "Actual malice" in its constitutional sense, or "Sullivan malice," means knowledge of falsity or reckless disregard of truth or falsity. Rosenblatt v. Baer, 383 U.S. 75,86 S.Ct. 669, 15 L.Ed.2d 597 (1966); Sullivan, supra.
On the other hand, common law malice in its traditional sense "may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or by the violence of the defendant's language, the mode and extent of publication, and the like."Fulton, 388 So.2d at 538. Common law malice also includes defamatory statements that are "made with knowledge that they are false or made with reckless disregard of whether they are false." Prudential Ins. Co. of America v. Watts, 451 So.2d 310,313 (Ala.Civ.App. 1984).
The determination of which standard of malice to apply in a given defamation case turns on an initial finding of the status of the allegedly defamed person as a public figure, public official, or a private individual. Fulton, 388 So.2d at 536. Although this is a question of law for the trial court, MobilePress Register, Inc. v. Faulkner, 372 So.2d 1282 (Ala. 1979), federal constitutional law requires us to review the record independently to determine whether there was clear and convincing evidence presented on the constitutional fact of actual malice in a defamation case. Widener v. Pacific Gas Electric Co., 75 Cal.App.3d 415, 142 Cal.Rptr. 304 (1977),cert. denied, 436 U.S. 918, 98 S.Ct. 2265, 56 L.Ed.2d 759
(1978).
Under the circumstances of this case, the plaintiff should be accorded the status of a public official. The plaintiff held the public office of town clerk, that is, she was a governmental employee who had substantial responsibility for, or control over, the conduct of governmental affairs. See,Rosenblatt v. Baer, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597
(1965). A "public official" must hold a position that would invite public scrutiny of the person holding it, apart from the scrutiny and discussion occasioned by the allegedly defamatory remarks. Furthermore, the "public office" should be one of such importance that the public has a particular interest in the qualifications and performance of the person holding that office beyond the public general interest in the qualifications and performance of all governmental employees. CurtisPublishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975,18 L.Ed.2d 1094 (1967).
Since we must apply the standards applicable to public officials, the category of malice that the plaintiff was required to show in order to overcome Gartman's qualified privilege was the "Sullivan" malice. We find that the evidence does not meet the "clear and convincing" standard for actual malice in such cases. Pemberton v. Birmingham News Co.,482 So.2d 257 (Ala. 1985), and cases cited therein. Indeed, the only statements attributed to Gartman are his responses to a statement made by Barnett in a council meeting and her assertion that she had heard that he had made statements at a senior citizens' luncheon. Taken together, these do not establish actual malice under the "clear and convincing" test. Therefore, we conclude that the trial court's grant of summary judgment to Gartman was proper.
Let the summary judgment for Richardson, the Board, and Gartman be affirmed.
AFFIRMED.
MADDOX, ALMON, HOUSTON and STEAGALL, JJ., concur. *Page 55