Patricia E. Warren appeals the judgment of the trial court dismissing various claims she made pursuant to 42 U.S.C. § 1983
against the Birmingham Board of Education ("the Board"); Geraldine Bell, interim superintendent of the Board; and Virginia Volker, J.J. Johnson, David Long, Barry Clemons, and Larry Coleman, all members of the Board. She also appeals the summary judgment entered by the trial court on her claim of libel and slander against the defendants.
On June 22, 1997, Warren was the principal at Norwood Elementary School, operated by the Board; on that date she learned that her immediate supervisor, Eleanor Traylor, had recommended that she be transferred to serve as principal at Brown Elementary School. On June 24, 1997, Warren met with Bell and was informed that the transfer was based on the determination that Warren could not be successful at Norwood. On the same day that Warren met with Bell, the Board approved Warren's transfer; Warren then met with Michael Todd, a representative of the local teachers' union, the Birmingham Education Association ("BEA"). Todd advised Warren that the transfer could not be legally effectuated if she did not receive notice of the transfer on or before June 30, 1997, the end of the school year.[1] Warren *Page 1128 
had no mailing address in her personnel file, and the written notice of the transfer was mistakenly sent to a lunchroom manager who also had the name Patricia Warren. Consequently, although Warren was aware of the Board's decision to effect her transfer, she did not receive written notice of that decision during June 1997.
On August 1, 1997, Warren filed her initial complaint in this litigation. Among other things, Warren made claims for injunctive relief, declaratory relief, and compensatory and punitive damages based on (1) alleged violations of the State Teacher Tenure Act, §§ 16-24-1 through 16-24-13, Ala. Code 1975, (2) alleged violations of her rights under the United States Constitution, pursuant to 42 U.S.C. § 1983, (3) allegations of slander, libel, and defamation, and (4) allegations of breach of contract and interference with contractual relations. The complaint also sought a temporary restraining order ("TRO") to prevent the Board from effecting any change in Warren's position at Norwood. It appears that the trial court heard arguments on the TRO request and denied it on the same day the complaint was filed. A trial on the merits was scheduled for August 4, 1997. When Warren's complaint was filed, the defendants' lawyers became aware that she had never received written notice of the Board's action. They subsequently entered into an agreement to allow Warren to voluntarily transfer to another available school or to stay at Norwood. Warren chose to stay at Norwood, and the parties notified the trial court that they had entered an agreement to dismiss the lawsuit. However, the trial court took no action with respect to the agreement.
At the Board's next meeting, on August 12, 1997, several parents of students and faculty members at Norwood appeared to voice their opposition to Warren's continuing as principal of the school. After reviewing the extent of the complaints against Warren, the Board voted to terminate Warren's contract, subject to her rights to contest the decision.[2] On August 13, 1997, Bell personally delivered to Warren written notice of the Board's decision to terminate her contract. Warren has remained on administrative leave with pay since that day; she has declined all offers to return to work during the litigation of her various claims.
On August 26, 1997, Warren filed a second complaint for injunctive relief to prevent her termination; this complaint asserted that the defendants had acted in retaliation against her for contesting the transfer in the original complaint. The complaint for injunctive relief restated some of the theories and claims she had asserted in her initial complaint contesting her transfer. The defendants attempted to have Warren's claims removed to a federal district court; the federal court remanded the case, based on Warren's contentions that she was still contesting the transfer under the theories advanced in her original complaint. On October 23, 1997, Warren filed a motion in the trial court seeking a stay of the administrative hearing concerning the termination of her contract. The trial court denied that motion on November 18, 1997.
On December 5, 1997, Warren filed a "second amended complaint," which also contested her transfer and termination, realleged the various theories and claims in her earlier complaints, and added further claims alleging fraud and bad faith. During the ensuing litigation of Warren's claims, Bell retired from the Board and was replaced by Dr. Johnny Brown. At Brown's instigation, Warren and the Board entered into mediation in March 1998. Although Warren requested and was offered a position as hearing officer with the *Page 1129 
Board as a result of the mediation, she rejected a written offer of such a position in settlement. Warren subsequently moved to amend her complaint so as to add Brown as a defendant, based on allegations that he had attempted to coerce her into settling the case.
Although the record and the briefs of the parties show no specific time for its action, the Board eventually rescinded its vote to terminate Warren's contract. The State Tenure Commission reversed the Board's decision to transfer Warren, finding "that the action of the Board was for personal and/or political reasons." We infer from references in the parties' briefs that the Board has appealed that decision to the Jefferson County Circuit Court.
Throughout the litigation of this case, the defendants responded to Warren's complaint and amended complaints with motions to dismiss her claims, or, in the alternative, for a summary judgment as to those claims. The general bases for these defense motions were that Warren had not exhausted her administrative remedies and her claims were moot. After several arguments by the parties addressing the defendants' motions to dismiss, or in the alternative, for a summary judgment, the trial court entered its final judgment on June 25, 1998. In pertinent part, the trial court's judgment denied the motion to add Brown as a defendant because Warren's allegations of coercion concerned Brown's attempts to resolve the case by mediation. The judgment also struck various affidavits submitted by Warren in support of her claims, on the basis that the affidavits were conclusory and contained hearsay.
The trial court's judgment addressed the defendants' motion to dismiss Warren's various claims based on alleged violations of her federal constitutional rights, as follows:
 "Plaintiff claims that her First Amendment right of freedom of expression has been denied. She claims the First Amendment right to oppose her `illegal' transfer.
 "Plaintiff and defendants cite numerous cases dealing with protected speech. It appears to the Court that plaintiff's claim is that her proposed termination is the result of her refusal to accept the transfer. The effort to transfer her was rescinded due to improper notice.
 "It appears to this Court that plaintiff has an effective administrative remedy as provided by § 16-24-1 et seq., Alabama Code 1975."
Finally, the trial court's judgment addressed Warren's claims for libel and slander, as follows:
 "Plaintiff claims that defendant, Geraldine Bell, made libelous or slanderous statements that plaintiff was a disruptive element in the school and in the community.
 "In this case, Ms. Bell was a member of the Board of Education and plaintiff was a principal at Norwood School. Thus these parties are `public officials' similar to the mayor and town clerk in Barnett v. Mobile County Personnel Bd., 536 So.2d 46 (Ala. 1988).
 "The Court finds there was a qualified privilege and that plaintiff has not made a showing of `Sullivan' [New York Times Co. v. Sullivan, 376 U.S. 254 (1964)] malice or actual malice by clear and convincing evidence. Therefore plaintiff's claim for libel or slander is denied and summary judgment is granted for defendants on this claim.
 "For the foregoing reasons, this Court finds that plaintiff's claims are premature and that there is an adequate remedy available through administrative procedures. Plaintiff's complaint is dismissed without prejudice to plaintiff's right to raise these issues before the appropriate administrative tribunal. Summary judgment is also entered for defendants on plaintiff's claim of libel and slander, and such claims are dismissed with prejudice." *Page 1130 
Warren appealed to the Supreme Court of Alabama, and that court transferred the appeal to this court, pursuant to § 12-2-7, Ala. Code 1975.
Although Warren argues that the trial court erred with respect to virtually every ruling it made in this litigation, she groups her assorted arguments into two general contentions: (1) that the trial court erred in dismissing her claims, except for libel and slander, without prejudice, and (2) that the trial court erred in entering a summary judgment for the defendants on her claims of libel and slander.
The record reveals that Warren's service at Norwood was accompanied by considerable controversy. Numerous complaints were asserted against Warren by parents of children at the school for her use of inappropriate or inconsistent disciplinary measures. Teachers at Norwood School also voiced grievances about Warren's conduct as a principal. The Board's notification to Warren that it had voted to terminate her contract recited several examples of Warren's ineffectiveness and incompetence in managing school problems. The events surrounding the Board's attempted transfer and termination of Warren were reported by various news media, and Warren testified that she suffered shame and humiliation as a result of such news coverage.
Preliminary to the legal analysis of Warren's arguments in this appeal, it should be noted that all of her claims stem from unsuccessful actions by the defendants to transfer her or to terminate her teaching contract. In essence, Warren argues that the defendants' actions regarding her employment, even though ineffectual to date, resulted in various violations of her federal constitutional rights to freedom of speech and freedom of association, as well as numerous contractual and tort claims under Alabama law. Moreover, it is undisputed that Warren has not exhausted the administrative procedures that are provided to her as a tenured teacher under state law for contesting the Board's actions. See §§ 16-24-1 through 16-24-13.
 I. The Claims Dismissed without Prejudice
It is settled law in Alabama that a teacher seeking relief from a school board's action with respect to her contract must exhaust the administrative remedies set out in the Teacher Tenure Act, §§ 16-24-1 through 16-24-13. Mason v. Huntsville City Bd. of Ed., 591 So.2d 860 (Ala.Civ.App. 1991); Alabama Ass'n of Sch. Bds. v. Walker, 492 So.2d 1013 (Ala. 1986). See also Hall v. City of Dothan, 539 So.2d 286 (Ala.Civ.App. 1988). Although Warren admits the general applicability of the exhaustion requirement, she argues that the exhaustion doctrine does not apply to the claims dismissed by the trial court without prejudice because, she says, those claims fall within the exceptions to the exhaustion doctrine set out in Hall, supra. In Hall, this court stated:
 "The exhaustion doctrine is subject to certain exceptions which attempt to balance the interests of claimants against the substantial policy considerations which favor the general rule. Porter v. Schweiker, [692 F.2d 740, 742 (11th Cir. 1982)]. Our supreme court has noted that these exceptions arise generally when:
 "`(1) the question raised is one of an interpretation of a statute, (2) the action raises questions of law only and not matters requiring administrative findings of fact or the exercise of administrative discretion, (3) exhaustion of administrative remedies would be futile or the remedies provided would be inadequate, and (4) requiring exhaustion of administrative remedies would result in irreparable harm.'
Goolsby v. Green, 431 So.2d 955, 958 (Ala. 1983)."
539 So.2d at 289.
In considering whether Warren's claims that the trial court dismissed without prejudice fit within the exceptions set out in *Page 1131 
Hall, we note that all of these claims flow from the defendants' actions under the Teacher Tenure Act. Despite the Board's attempt to transfer Warren and to terminate her contract, the record indicates that no transfer took place and that Warren remains employed and on administrative leave. Although the Board may be in the process of appealing the Tenure Commission's reversal of Warren's transfer, Warren has so far prevailed in obtaining relief under the Teacher Tenure Act. Essentially, all of Warren's claims rest on the assertion that the defendants acted in bad faith or with malicious intentions in attempting to use the Teacher Tenure Act to require her transfer and termination.
Because Warren's claims rest on the factual determination of whether the defendants acted in bad faith or with malicious intent, she presents no colorable argument that her claims involve the interpretation of a statute. Similarly, because Warren's claims rest on factual allegations, they do not raise questions of law only. Thus, the first two exceptions in Hall do not apply to Warren's claims that were dismissed without prejudice. With respect to the last two exceptions in Hall, we note that Warren's administrative remedies have so far prevented the transfer and termination sought by the defendants. Her administrative remedies have been effective, and she has made no showing of irreparable harm. We therefore conclude that the exceptions in Hall do not exempt Warren from the requirement that she exhaust her administrative remedies before proceeding with her claims against the defendants.
Warren also argues that the exhaustion requirement does not apply to her claims alleging violations of her federal constitutional rights under 42 U.S.C. § 1983. The court in Hall, citing Patsy v. Florida Board of Regents, 457 U.S. 496 (1982), recognized that exhaustion of administrative remedies is not a prerequisite to an action pursuant to 42 U.S.C. § 1983. However, we note that many jurisdictions do not give the rationale in Patsy such broad application; these courts note that the decision in Patsy rested on the assumption that exhaustion of administrative remedies under the facts of that case would be futile. See generally Annotation, "Exhaustion of State Remedies," 47 A.L.R. Fed. 19 §§ 7, 9, 13 (Lawyers Co-op. 1980 West Supp. 1998). This court need not consider the underlying conflicts among the various authorities on this point because the judgment of the trial court is due to be affirmed on the merits of Warren's 42 U.S.C. § 1983
claims.
"To state a claim under § 1983, the plaintiff must allege facts constituting a deprivation of a constitutional right, under color of state law." C.B. v. Bobo, 659 So.2d 98, 102 (Ala. 1995). Warren's § 1983 claims assert the violation of her constitutional rights to substantive and procedural due process, free speech (alleging that the defendants penalized her because she spoke out against her transfer), and free association (alleging that she was penalized by the defendants because she hired a lawyer to challenge the defendants' conduct).
With respect to Warren's claims to denial of substantive due process, we note that substantive due process provides protection against violations of fundamental constitutional rights. Palko v. Connecticut, 302 U.S. 319 (1937); C.B., supra. The record in this case is clear that Warren remains employed. Therefore, even if Warren could characterize her employment as a fundamental right to property, she has not been deprived of that right.
Procedural due process guarantees that fundamental rights will not be infringed without a fair hearing. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985); C.B., supra. In this case, the record establishes that Warren availed herself of numerous hearings where she was fully *Page 1132 
represented and empowered to assert her claims. There is no basis in the facts as presently developed that supports Warren's claim that she was denied a fair hearing. Similarly, Warren's claims with respect to free speech and free association are unsupported. The record reveals that she spoke out loudly and often; she has been represented by counsel throughout the progress of this litigation. We conclude that Warren has made no showing of a deprivation of her fundamental constitutional rights. C.B., supra. Of course, the trial court's dismissal of Warren's claims without prejudice insures her right to reassert these claims in the event that the defendants take some action that does infringe upon her basic constitutional rights.
In summary, Warren's claims under 42 U.S.C. § 1983 are not supported by any showing of a violation of the fundamental constitutional rights subject to protection by that statute. Palko and C.B., supra. All of Warren's other claims that were dismissed without prejudice by the trial court were properly dismissed because none of those claims fit within any exception to the doctrine of exhaustion of administrative remedies set out in Hall, supra. Accordingly, the trial court is due to be affirmed with respect to its judgment on the dismissal of Warren's claims without prejudice.
 II. Libel and Slander
The trial court also entered a summary judgment for the defendants on Warren's claims of libel and slander. In reviewing the disposition of a motion for a summary judgment, we utilize the same standard as the trial court in determining "whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
Warren argues that the defendants, and specifically Bell, committed libel and slander against her when they announced to the media that Warren had been transferred. The law of libel and slander is discussed generally under the tort of defamation, the elements of which were discussed in detail by our Supreme Court as follows:
 "To establish a prima facie case of defamation, the plaintiff must show that the defendant was at least negligent, see Mead Corp. v. Hicks, 448 So.2d 308 (Ala. 1983); Restatement (Second) of Torts § 558, § 580 B (1977), in publishing a false and defamatory statement to another concerning the plaintiff, Restatement (Second) of Torts § 558, which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod). Restatement (Second) of Torts § 558; see also Albert Miller Co. v. Corte, 107 F.2d 432 (5th Cir. 1939), cert. denied, Corte v. Albert Miller Co., 309 U.S. 688 (1940). Spoken words that impute to the person of whom they are spoken the commission of an indictable criminal offense involving infamy or moral turpitude constitute slander actionable per se. Ceravolo v. Brown, 364 So.2d 1155 (Ala. 1978), quoting Marion v. Davis, 217 Ala. 16, *Page 1133 114 So. 357 (1927); Tonsmeire v. Tonsmeire, 281 Ala. 102, 199 So.2d 645 (1967); quoting Marion v. Davis, 217 Ala. 16, 114 So. 357 (1927); Lewis v. Ritch, 417 So.2d 210 (Ala.Civ.App. 1982); Ala. Code 1975, § 6-5-180. An oral publication imputing a crime of larceny falls within this definition. Phillips v. Bradshaw, 167 Ala. 199, 52 So. 662 (1910); Lewis, supra, at 211-12. When a defamatory publication is actionable per se, the law infers injury to reputation as a natural consequence of the defamation and, as a result, the plaintiff is entitled to presumed damages. Thus, imputations of indictable criminal offenses are slanderous per se and relieve the plaintiff of the requirement of proving `actual harm to reputation or any other damage' in order to recover nominal or compensatory damages. W. Prosser and W. Keeton, The Law of Torts, § 112, at 788 (5th ed. 1984). Of course, in such cases, the plaintiff's entitlement to presumed damages depends on whether he or she proves the remaining elements of defamation, and on whether the defendant alleges and shows the existence of an affirmative defense, such as truth or privilege. Defendants argue that the defenses of absolute and conditional privilege apply to their alleged slanderous comments. In libel and slander actions, a showing that the alleged defamation was made `on a privileged occasion or under circumstances and conditions which made it privileged in law' constitutes a complete defense. Ferdon v. Dickens, 161 Ala. 181, 49 So. 888 (1909)."
Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091-92 (Ala. 1988) (footnotes omitted).
As noted above, the trial court found that Warren and the defendants were "public officials" similar to the mayor and town council in Barnett, supra. In Barnett, the Supreme Court defined a "public official" as follows:
 "A `public official' must hold a position that would invite public scrutiny of the person holding it, apart from the scrutiny and discussion occasioned by the allegedly defamatory remarks. Furthermore, the `public office' should be one of such importance that the public has a particular interest in the qualifications and performance of the person holding that office beyond the public general interest in the qualifications and performance of all governmental employees. Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)."
536 So.2d at 54. Under this test, the trial court correctly held that Warren and the defendants were public officials.
Because the defendants were public officials, Warren was required to present substantial evidence that the defendants made the allegedly defamatory remarks concerning her transfer with "actual malice" as defined in New York Times Co. v. Sullivan, supra. The Barnett court held that this type of malice
 "`may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or by the violence of the defendant's language, the mode and extent of publication, and the like.' [Fulton v. Advertiser Co., 388 So.2d 533, 538 (Ala. 1980)]."
536 So.2d at 54.
After carefully reviewing this record, we note that only Warren's affidavit, in which she speculates about the intent of the defendants in their statements concerning her, provides anything even remotely approaching an indication of malice. Warren's affidavit was stricken by the trial court as being inadmissible speculation, and she makes no argument concerning the validity of that ruling in this appeal. Moreover, Warren's speculation as to the defendants' intent when they made their statements concerning her does not rise to the level of substantial evidence of the actual malice required for her to maintain *Page 1134 
her claims of libel and slander. Barnett, supra.
Although a further analysis of Barnett's discussion of "qualified privilege" would also indicate that the trial court correctly attributed that privilege to the defendants in this case, we need not engage in that analysis. In the absence of substantial evidence of actual malice, Warren's claims of libel and slander must fail. Accordingly, the trial court's summary judgment for the defendants is due to be, and it is hereby, affirmed.
AFFIRMED.
Yates, Monroe, Crawley, and Thompson, JJ., concur.
[1] Section 16-24-5, Ala. Code 1975, makes transfer of a teacher contingent upon the teacher's receipt of written notice. See also Strong v. Alabama State Tenure Comm'n, 583 So.2d 273
(Ala.Civ.App. 1991). Under §§ 16-24-3 and 16-24-12, Ala. Code 1975, Warren's contract would be renewed under the same terms unless the Board took a different action and gave her notice of the action by the end of the school year.
[2] See generally § 16-24-9, Ala. Code 1975.