[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 386 
Richard W. Casey appeals from a summary judgment entered by the Baldwin Circuit Court in favor of J. Vincent McConnell on Casey's claims against McConnell (case no. 2060324) and from a subsequent postjudgment order reserving jurisdiction as to McConnell's counterclaim seeking attorney fees and costs from Casey under the Alabama Litigation Account-ability Act, Ala. Code 1975, § 12-19-270 et seq. ("the ALAA"), and directing the entry of a final judgment as to the adjudication of Casey's claims (case no. 2060518). We dismiss one appeal (case no. 2060518); as to the other appeal (case no. 2060324), we affirm in part and reverse in part.
The facts of this case are virtually undisputed. Casey, a married man who was approximately 65 years old at the time of trial, had had a history of health problems including heart disease and hepatitis C. After suffering two heart attacks, Casey began an exercise regimen at Eternally Transformed Fitness Enterprises ("ETFE"), a fitness facility owned and operated by McConnell. Casey's wife also began an exercise program at ETFE.
Mariette Pielage, a massage therapist, performed therapeutic massages for *Page 387 
clients (including Casey) at ETFE. Pielage and McConnell developed an intimate relationship, and Pielage began residing with McConnell in his home. McConnell and Pielage were eventually engaged to be married, and Pielage became pregnant in December 2004. In May 2005, Pielage, who is a citizen of the Netherlands, returned there to renew her work visa, and McConnell provided her with a prepaid airline ticket for her return to the United States. Shortly thereafter, McConnell sent e-mail messages to Pielage expressing concerns regarding their impending marriage. In approximately late May or early June 2005, McConnell terminated their marriage engagement and canceled Pielage's prepaid airline ticket.
Pielage had developed a friendship with Casey and his wife through their interactions at ETFE, and after McConnell had canceled her airline ticket and terminated their relationship, Pielage contacted Casey's wife seeking assistance. Pielage obtained another airline ticket and returned to the United States in July 2005. Upon her arrival in the United States, Pielage resided with Casey and his wife in their home for approximately a month before leasing and moving into a cottage. After Pielage had moved into the cottage, Casey continued to assist her financially so that she could afford her rental payments.
After McConnell terminated his engagement to Pielage, McConnell intimated, in conversations with ETFE patrons, that Pielage had had a sexual relationship with Casey. Julie Beazley, a patron of ETFE who had undergone physical training with McConnell, stated in an affidavit that McConnell had told her in June 2005 that "Pielage gave very long massages to another client of hisi.e., Casey] and that [McConnell] didn't know what was going on up there." Furthermore, Karen Wilson, another patron of ETFE who had received massage therapy from Pielage, stated in an affidavit that McConnell had had a private conversation with her in July 2005 at her place of business in which he had explained that he wanted her to know "his side of the story" regarding his relationship with Pielage and had stated that "Pielage used to give [Casey] two-hour massages and that for all he knew [Casey] could be the father of the child."
Casey filed a complaint in July 2005 seeking an award of damages pursuant to § 6-5-181, Ala. Code 1975, alleging that McConnell had made false statements to third parties indicating that he had had sexual intercourse with Pielage and that he had fathered a child with Pielage and asserting those defamatory statements had placed him in a false light with the public. In September 2005, McConnell filed an answer denying those allegations and a counterclaim seeking an award of attorney fees and costs under the ALAA. In January 2006, Casey suffered another heart attack; he later amended his complaint to add claims of slander per quod and invasion of privacy and to allege that he had suffered his most recent heart attack as a result of McConnell's statements.
McConnell filed a motion for a summary judgment; Casey filed a response to McConnell's summary-judgment motion. On November 20, 2006, the trial court granted McConnell's motion for a summary judgment as to Casey's claims without expressly ruling on his counterclaim seeking attorney fees and costs under the ALAA or reserving jurisdiction to do so. Casey appealed from that judgment. On December 5, 2006, McConnell filed a motion to alter, amend, or vacate the judgment in which he requested that the trial court reserve jurisdiction as to McConnell's ALAA counter claim and direct the entry of a final judgment, pursuant to Rule 54(b), Ala. R. Civ. P., as to the summary *Page 388 
judgment entered on Casey's claims. On January 5, 2007, the trial court granted McConnell's postjudgment motion and issued an order that directed the entry of a final judgment as to Casey's claims and that reserved jurisdiction to rule upon McConnell's ALAA claim at a later date. Casey again appealed. The Alabama Supreme Court transferred the appeals to this court pursuant to § 12-2-7(6), Ala. Code 1975. Because the first appeal was, as a matter of law, held in abeyance pending the trial court's ruling on the post-judgment motion, see
Rule 4(a)(5), Ala. R.App. P., the second appeal is duplicative and due to be dismissed. See Jones v. Lanthrip,765 So.2d 682 (Ala.Civ.App. 2000).
This court's review of a summary judgment is well settled.
 "In reviewing the disposition of a motion for a summary judgment, we utilize the same standard as the trial court in determining `whether the evidence before [it] made out a genuine issue of material fact' and whether the movant was `entitled to a judgment as a matter of law.' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990)."
Warren v. Birmingham Bd. of Educ., 739 So.2d 1125,1132 (Ala.Civ.App. 1999). "When a party opposing a properly supported motion for summary judgment offers no substantial evidence to contradict that presented by the movant, the trial court must consider that evidence uncontroverted, with no genuine issue of material fact existing." Shows v. DonnellTrucking Co., 631 So.2d 1010, 1013 (Ala. 1994) (citingVoyager Guar. Ins. Co. v. Brown, 631 So.2d 848
(Ala. 1993)). "Mere conclusory allegations or speculation that fact issues exist will not defeat a properly supported summary judgment motion, and bare argument or conjecture does not satisfy the nonmoving party's burden to offer substantial evidence to defeat the motion." Blackburn v. State FarmAuto. Ins. Co., 652 So.2d 1140, 1142 (Ala. 1994).
On appeal, Casey contends that the trial court lost jurisdiction to hear McConnell's counterclaim seeking an award of attorney fees and costs pursuant to the ALAA because, he argues, the trial court did not reserve jurisdiction to consider that claim when it entered the summary judgment.
The ALAA provides that the court must award attorney fees and costs as a part of its judgment on the merits of the case; it does not create a new or separate cause of action that can be brought after a case is litigated and given a final adjudication on the merits. Ala. Code 1975, § 12-19-270;Gonzalez, LLC v. DiVincenti 844 So.2d 1196, 1201 (Ala. 2002). The language of the ALAA allows the trial court to consider the outcome of proceedings when making its determination as to whether a party's action was without substantial justification. Ala. Code 1975, § 12-19-273(7);Gonzalez, *Page 389 844 So.2d at 1201; and Meek v. Diversified Prods. Corp.,575 So.2d 1100, 1103 (Ala. 1991). Thus, the trial court can hold a separate hearing on an ALAA claim after the entry of a final judgment on the merits provided that the trial court specifically reserves jurisdiction to hear the ALAA claim.Gonzalez, 844 So.2d at 1201. Otherwise, a judgment that does not reserve jurisdiction to hear the ALAA claim at a later date puts an end to all controversies at issue, including the ALAA claim. Gonzalez, 844 So.2d at 1201-02;see also Baker v. Williams Bros., Inc., 601 So.2d 110,112 (Ala.Civ.App. 1992).
Although, it is well settled that a trial court has no jurisdiction to modify or amend a final order suasponte more than 30 days after the judgment has been entered, except to correct clerical errors, see George v.Sims, 888 So.2d 1224, 1226-27 (Ala. 2004), a trial court has jurisdiction to alter, amend, or vacate a judgment pursuant to a motion filed under Rule 59(e), Ala. R. Civ. P.
In this case, the trial court granted McConnell's motion for a summary judgment on November 20, 2006, but did not expressly rule on McConnell's counter-claim seeking attorney fees and costs under the ALAA. Although the silence of that judgment as to the ALAA counter-claim would, under Alabama precedents, be interpreted as an implicit denial of that counterclaim, McConnell timely filed a motion to alter, amend, or vacate the judgment pursuant to Rule 59(e), Ala. R. Civ. P., on December 5, 2006 — well before 30 days had elapsed. The trial court granted McConnell's postjudgment motion and issued an order that, in essence, vacated the judgment as to the ALAA claim and directed the entry of a final judgment as to Casey's claims. Thus, we conclude that the trial court properly reserved jurisdiction to adjudicate McConnell's ALAA claim.
Casey also argues that the trial court erred in entering a summary judgment in favor of McConnell as to all of Casey's claims. We will consider separately the propriety of that judgment as to three particular claims of error that Casey has asserted on appeal.
Casey's complaint alleged that McConnell's statements constituted slander per se pursuant to § 6-5-181, Ala. Code 1975; that statute makes actionable statements that falsely impute to a woman "a want of chastity" without proof of special damages. McConnell's summary-judgment motion asserted that § 6-5-181 had been ruled unconstitutional in Butler v.Town of Argo, 871 So.2d 1, 17 (Ala. 2003). Casey's response to McConnell's summary-judgment motionconceded that a slander per se claim, as it pertains to a want of chastity, would be unconstitutional.
The law is well settled that "[a] party may not predicate an argument for reversal on `invited error,' that is, `error into which he has led or lulled the trial court.'" Atkins v.Lee, 603 So.2d 937, 945 (Ala. 1992) (quoting DixieHighway Express, Inc. v. Southern Ry., 286 Ala. 646, 651,244 So.2d 591, 595 (1971)). The doctrine of invited error "provides that a party may not complain of error into which he has led the court." Ex parte King, 643 So.2d 1364,1366 (Ala. 1993). In other words, "[a] party cannot win a reversal on an error that party has invited the trial court to commit." Neal v. Neal, 856 So.2d 766, 784 (Ala. 2002).See also Liberty Nat'l Life Ins. Co. v. Beasley,466 So.2d 935, 937 (Ala. 1985); and State Farm Mut. Auto. Ins.Co. v. Humphres, 293 Ala. 413, 418, 304 So.2d 573, 577
(1974).
Consequently, Casey's concession in his response to McConnell's summary-judgment motion that a slander per se claim *Page 390 
under § 6-5-181 is unconstitutional bars his argument on appeal that the trial court erred in entering the summary judgment in favor of McConnell as to that claim. Because any error committed by the trial court in entering the summary judgment as to the slander per se claim was invited by Casey, we may not properly reverse the judgment as to that claim.
Casey further contends that the summary judgment should not have been entered in favor of McConnell as to Casey's claim of slander per quod because, he argues, it was undisputed that he suffered special damages, i.e., a heart attack.[1]
Casey did not specifically document or assert any monetary loss in his pleadings or in his answers to discovery. Casey admitted in his deposition that he could not produce any evidence,e.g., a medical bill or a document showing a monetary payment, as to which he was seeking compensation. Furthermore, Casey did not produce any evidence, other than his own testimony, that linked the occurrence of his heart attack to McConnell's statements.
To establish a prima facie case of defamation, of which slander is a branch, "`the plaintiff must show that the defendant was at least negligent . . . in publishing a false and defamatory statement to another concerning the plaintiff.'"Warren, 739 So.2d at 1132 (quoting Nelson v.Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala. 1988)). Even when the statement is not actionable per se, as Casey conceded, a plaintiff may maintain "`"an action for slander [per quod] founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt"'" if that plaintiff alleges and proves "`"special damages."'" Butlerv. Town of Argo, 871 So.2d at 17 (quoting Ceravolo v.Brown, 364 So.2d 1155, 1157 (Ala. 1978), quoting in turnMarion v. Davis, 217 Ala. 16, 18, 114 So. 357, 359
(1927)). "`Special damages are the material harms that are the intended result or natural consequence of the slanderous statement, and the general rule is that they are limited to "material loss capable of being measured in money."'"Butler, 871 So.2d at 18 (quoting Shook v. St. BedeSch., 74 F.Supp.2d 1172, 1180 (M.D.Ala. 1999)) (internal citations omitted).
Accordingly, Casey had to produce substantial evidence indicating that he had suffered a material harm, capable of being measured in money damages, as a consequence of McConnell's statements. See Butler, supra. Casey did not meet that burden. Casey did not produce any evidence showing that he had sustained a monetary loss as a result of McConnell's statements, and Casey did not adduce substantial evidence indicating that his heart attack was caused by McConnell's statements. Casey's conjecture concerning the origins of his third heart attack could not alone defeat McConnell's motion for a summary judgment. See Blackburn v.State Farm Auto. Ins. Co., 652 So.2d at 1142. Thus, because Casey failed to produce substantial evidence of special damages — a material element of his slander per quod claim — the trial court properly granted McConnell's summary-judgment motion as to that claim.
Casey additionally argues that the trial court erred in entering a summary judgment *Page 391 
in favor of McConnell as to Casey's claim of invasion of privacy because, he says, McConnell did not meet his burden to establish that he was entitled to a judgment as a matter of law.
"Alabama has long recognized that a wrongful intrusion into one's private activities constitutes the tort of invasion of privacy." Butler, 871 So.2d at 12. It is generally accepted that invasion of privacy can be independently established by four limited and distinct wrongs, including: "`(1) intruding into the plaintiffs physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiffs personality for a commercial use.'" Exparte Birmingham News, Inc., 778 So.2d 814, 818 (Ala. 2000) (quoting Johnston v. Fuller, 706 So.2d 700, 701
(Ala. 1997)).
In Carter v. Innisfree Hotel, Inc., 661 So.2d 1174
(Ala. 1995), the Alabama Supreme Court explained how an individual may commit the tort of invasion of privacy by intruding into another's physical solitude or seclusion — the first branch of invasion of privacy enumerated inButler:
 "One may invade another's privacy through either an intrusion upon a physical space, such as a trespass, or by an invasion of one's `emotional sanctum'; the law prohibits a wrongful intrusion into either of these areas of privacy. Phillips [v. Smalley Maint. Servs., Inc., 435 So.2d 705, 708 (Ala. 1983)]. In defining the invasion of privacy tort, the Phillips Court quoted comment b to Restatement (Second) of Torts § 652B (1977):
 "`The invasion may be physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiffs room in a hotel or insists over the plaintiffs objection in entering his home. It may also be use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiffs private affairs, as by looking into his upstairs window with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns. . . .'"
661 So.2d at 1178 (emphasis added). Moreover, inButler, the Alabama Supreme Court noted what must be established to prove a "false light" claim — the third branch of invasion of privacy enumerated in Butler:
 "Applying Restatement (Second) of Torts
§ 652E (1977) and the following comments, this Court has adopted the following definition for `false light' invasion of privacy:
 "`"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
 "`"(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
 "`"(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."'
 "Schifano v. Greene County Greyhound Park, Inc., 624 So.2d 178, 180 (Ala. 1993) (emphasis omitted) (quoting Restatement (Second) of Torts § 652E (1977)). A false-light claim does not require that the information made public be private; instead, the information made public must be false. See Restatement (Second) of Torts § 652E cmt. a. (1977). *Page 392 
 "Additionally, it is integral to a false-light claim that the untrue information be publicly communicated. Comment a. to § 652E states, `The rule stated here is, however, limited to the situation in which the plaintiff is given publicity. On what constitutes publicity and the publicity of application to a simple disclosure, see § 652D, Comment a., which is applicable to the rule stated here.'"
871 So.2d at 12-13.
McConnell's sole argument in his submissions to the trial court seeking a summary judgment as to Casey's claim of invasion of privacy was based on a wholly different branch of that tort than that asserted by Casey in his amended complaint. Casey alleged in his amended complaint that "[McConnell had] intentionally and maliciously intruded into [Casey's]emotional sanctum by spreading false gossip and rumors regarding Casey's relationship with [Pielage]" (emphasis added). However, McConnell's sole argument seeking summary judgment as to Casey's claim of invasion of privacy asserted that Casey had not established that McConnell "placed [Casey] in a false light in the public eye" (emphasis added).
The evidence necessary to prove that McConnell committed the tort of invasion of privacy by intrusion upon seclusion is different from the evidence needed to establish a "false-light" claim. By addressing a branch of invasion of privacy differing from that relied on by Casey in his amended complaint, McConnell did not make a prima facie showing that there was no genuine issue of material fact and that he was entitled to a judgment as a matter of law on that claim so as to shift the burden of production to Casey.
McConnell asserts for the first time on appeal that Casey did not adduce substantial evidence of the elements of an intrusion-upon-seclusion claim. In most instances, this court will affirm the trial court on any valid ground regardless of whether the ground was considered or rejected by the trial court. However, we may not do so when due-process constraints require some notice at the trial level of the basis that would otherwise support the affirmance, "such as . . . where a summary-judgment movant has not asserted before the trial court a failure of the nonmovant's evidence on an element of a claim . . . and therefore has not shifted the burden of producing substantial evidence in support of that element." LibertyNat'l Life Ins. Co. v. University of Alabama Health Servs.Found., P.C., 881 So.2d 1013, 1020 (Ala. 2003).
Therefore, to the extent that the trial court entered its summary judgment in favor of McConnell as to Casey's invasion-of-privacy claim based upon a claimed intrusion upon seclusion, that judgment is reversed. In all other respects, the judgment of the trial court is affirmed. The cause is remanded for further proceedings consistent with this opinion.
2060324 — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
2060518 — APPEAL DISMISSED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.
[1] Notwithstanding Casey's argument to the contrary, McConnell did, in fact, dispute that Casey suffered special damages. McConnell stated in his summary-judgment motion that Casey had "failed to quantify the damages from the alleged acts in any way and [had] failed to specifically state money damages in any pleadings or discovery in this action." See Butlerv. Town of Argo, 871 So.2d at 17.