This civil action by Capitol City Haulers (C.C.H. or plaintiff) was upon a public works bond issued by Travelers Indemnity Company (Travelers or defendant) pursuant to § 39-1-1
of the Code of Alabama (1975).
The plaintiff, a trucking firm, sought to recover $9,217.73 as the balance due on charges for delivering sand to Southeast Contractors (Southeast) in the first quarter of 1979 at the rate of $3.50 per ton for its hauling. Southeast ordered the sand in question for use in manufacturing asphalt, and it was delivered by C.C.H. to one of the two Southeast asphalt plants and placed into a stock pile where it was intermingled with other sand. Southeast mixed the sand with proper raw materials and produced asphalt, sometimes called plant mix. Sand comprised from 25% to not more than 30% of the mixture here involved.
The Southeast asphalt plants were not bonded operations. Asphalt produced at those plants was used by Southeast on its bonded construction jobs, employed in its unbonded contracts, sold to the State of Alabama under purchase orders and sold at private sales. On the various bonded jobs of Southeast, a payment bond was posted to secure payment for those who furnished materials, supplies or services for the prosecution of the bonded work; otherwise, no payment bonds were posted by Southeast for other types of its asphalt business.
Southeast was the road contractor with the State of Alabama for a project on Highway 78, which was a bonded job. It carried a payment bond and a performance bond, both of which were issued by Travelers as surety. Southeast executed a "General Agreement of Indemnity" to Travelers on July 14, 1978, which included certain assignments to Travelers in the event of a default of Southeast on the contract.
In its highway maintenance program, the Highway Department of the State of Alabama bought asphalt from Southeast by purchase order, and state employees utilized the plant mix in making repairs to Highway 31. There was no bond required nor posted in connection with asphalt obtained under these purchase orders.
On February 1, 1979, Southeast notified the State that they could not complete the work on projects then under contract, including the Highway 78 job. Travelers was called upon by the State, as Southeast's surety, to complete the Highway 78 contract under its performance bond. By means of a security agreement dated February 1, 1979, which in many respects duplicated the provisions of the "General Agreement of Indemnity" previously executed, Southeast granted a security interest to Travelers as to all of Southeast's accounts, contract rights, accounts receivable and a few other assets; and, in consideration therefor, Travelers furnished funds totaling over $200,000 to Southeast until February 23, 1979, for Southeast's payroll, machinery rentals and repairs, utilities and some additional *Page 1014 
expenses in order to prevent Southeast's bankruptcy and to allow adequate time for Travelers to make detailed analysis of Southeast's status and finances. This was done so as to enable Travelers to determine whether to finance the existing bonded contract operations by Southeast or whether to relet the existing work on a public bid basis. Travelers decided to contract with another construction company to complete the work upon Highway 78. Because of Southeast's inability to perform its contracts, Travelers lost approximately $11,000,000.
At no time did Travelers operate the asphalt plant nor any of Southeast's operations, but Travelers did supply funds to enable Southeast to temporarily continue its operations. The State of Alabama paid to Southeast about $104,000 for asphalt bought under purchase orders, and, pursuant to the security agreement, the check was endorsed by Southeast to Travelers.
One issue is whether the sand delivered by C.C.H. was utilized in a bonded job, specifically if it was used upon the Highway 78 project.
The president of C.C.H. testified that he did not know what happened to the sand after it was placed in the Southeast stock pile, that he did not know the identity of the job on which the sand was used, and that he was not familiar with the fact that Southeast was bonded on the Highway 78 contract.
The president of Southeast testified that, while it was virtually impossible to designate which sand went into each job, in his judgment the majority of the sand in question was utilized upon Highway 31 and Highway 78 after it was manufactured into plant mix. He had no opinion as to how much sand was used on either highway. However, he stated that the Highway Department's records would reveal the amount of asphalt laid on Highway 78 during the relevant period of time, and that the amount of sand which went into Highway 78 could be determined by taking 30% of the amount of asphalt.
State records disclosed that the only asphalt placed upon Highway 78 during the first quarter of 1979 was between January 15 and February 15 for a total of 417 tons. Thus, under the only evidence in the case as to sand utilized on the Highway 78 bonded project, Travelers was indebted to C.C.H. under the bond for $437.85 (417 X 30% X $3.50).
The jury found in favor of C.C.H. and against Travelers and Southeast for $9,217.73, which was the exact amount of the total account of C.C.H. for hauling the sand. Southeast did not contest the case, and the default judgment against them is now final in the amount of the jury's verdict.
The learned trial judge overruled Travelers' various motions for a directed verdict, its motion for a judgment notwithstanding the verdict and the motion for a new trial.
Travelers now appeals, complaining that the verdict was excessive and also that the verdict of the jury was in direct contradiction to the trial court's oral instructions to the jury.
While many of the jury instructions were of like tenor, an example of Travelers' argument is presented by the following portion of the oral charge of the court:
 The court charges the Jury the Plaintiff is not entitled to recover for the hauling or transportation of any sand or other materials which were not used for or in the prosecution of the work for which a payment bond had been issued by the defendant, Travelers Company as surety.
The charge to the jury made it plain and mandatory, under the evidence, that C.C.H. could not be awarded any sum for sand which was based on any job other than the Highway 78 project.
C.C.H. contends that, even though the entire pleadings (including an amendment to its complaint which was filed on the day of the trial) were based upon an effort to recover under Travelers' public works bond on the Highway 78 project, the case falls under the provisions of ARCP rule 15 (b) since the parties, by implied consent, tried the case under another issue. C.C.H. states *Page 1015 
in its brief that its "theory at trial sounded in equity, the theory being that Plaintiff Capitol City did indeed deliver sand to Southeast Contractors," and that Travelers refused to pay the plaintiff. It seeks to invoke the clean hands doctrine but opines that the jury was probably influenced by the fact that Travelers received the $104,000. "The situation set before the jury in this case somehow did not seem right to them and they came back resoundingly in favor of what was `right.'"
The circuit court, in overruling Travelers' combined motion for a judgment N.O.V. and for a new trial, in substance, stated in the judgment entry that, by consent of the parties, the case was tried and argued to the jury upon a theory of law other than that expressed in the pleadings and that the jury verdict appeared to be based in part upon such theory. The "theory" is not set forth nor labeled anywhere in the record.
After reviewing all of the evidence and intently studying the briefs and oral argument of counsel, we confess that any legal or equitable cause of action outside of the pleadings upon which to peg the verdict has escaped us. Usually, the decision as to whether the issue has been tried by express or implied consent under Rule 15 (b) is a matter for the trial court's discretion, which will not be altered on appeal absent an abuse thereof. However, a decision as to whether there was an abuse of discretion is not necessary in this case.
The jury charge was solely concerned with issues raised only by the pleadings. There was no jury charge upon any theory of recovery not covered by the amended complaint; it was not even mentioned. If we assume, without deciding, that, in addition to the amended complaint, a valid theory of liability was tried by consent, the trial court erred in overruling the motion for a new trial. In Atlantic Coast Line Railroad Co. v. Darden,216 F.2d 125 (5th Cir. 1954), the following applicable language appears:
 [W]hile Rule 15 (b) does make provision for enlarging the issues when an issue not raised by the pleadings is tried by express or implied consent, this does not mean that the jury may be left, as it were, without direction or control to determine for themselves whether and what issues were so presented. . . . [I]n such a situation the pleadings should be amended, . . . or the district judge, by an appropriate instruction, should frame the issue or issues for the jury.
Argument of counsel to a jury does not replace the court's charge to the jury. If a new theory of recovery or defense outside of the pleading is presented, the interested attorney has a duty to the court to call it to the court's attention with sufficient particularity and clarity to enable the court to amply define the issue to the jury. The jury cannot be left without a rudder as to what they are called upon to decide and as to the law applicable thereto. Since nothing is contained in the jury charge upon the new theory of recovery, if they did return the verdict upon such theory, it was not authorized under the law. What we have said in this regard presupposes that there was a valid new theory and that it was within the province of a jury to decide after being properly instructed upon the law; but, if it was not a jury question, it was an issue for the court's determination. ARCP, Rules 38 and 39.
We hold, therefore, that the court should have granted Travelers' motion for a new trial on the ground that the awarded damages were excessive. Additionally, it appears that the verdict was clearly contrary to the charge of the court.
 There was no objection by either party to the charge on damages. This instruction to the jury, to which both parties assented by their silence, became the law of the case by which the jury was bound. Lee v. Gidley, 252 Ala. 156, 40 So.2d 80 (1949).
Liberty Truck Sales v. Fountain, Inc., 381 So.2d 646
(Ala.Civ.App. 1980)
As previously stated, the evidence shows that C.C.H. was entitled, at most, to recover from Travelers under the bond the sum of $437.85, plus a stipulated attorney's fee of one-third thereof and interest at the rate of six percent per annum from the earliest *Page 1016 
possible date that the work could have been done, January 15, 1979. A judgment will accordingly be entered that, unless the plaintiff files a remittitur with the clerk of this court within thirty days reducing the judgment to $583.80 ($437.85 plus such attorney's fee) and interest upon the amount of $437.85 as above stated, the judgment of the trial court shall stand reversed and the case shall be remanded. If, however, such remittitur is filed, a judgment for $583.80, with said interest thereon, will stand affirmed. Liberty Truck Sales,Inc. v. Fountain, supra.
The foregoing opinion was prepared by retired circuit judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama (1975). His opinion is hereby adopted as that of the court.
AFFIRMED CONDITIONALLY.*
All the Judges concur.
* No remittitur having been filed, the Court of Civil Appeals, on January 8, 1981, issued an order reversing and remanding this case.