Faye Gary is a lieutenant with the Gadsden Police Department. Richard Crouch is the chief of police. Lt. Gary became frustrated when her superiors at the Gadsden Police Department rejected her attempt to "roll" a less senior officer to a less desirable shift so that she could stay on the first shift, informing her that she could not "roll" that officer because the officer was in a different unit from Lt. Gary and that department rules prevented cross-unit "rolls." Lt. Gary mentioned her frustration with this situation while she was talking with Robert Avery, her friend and a member of the Gadsden City Council. *Page 312 
Councilman Avery was an outspoken critic of the administration of the Gadsden Police Department. Councilman Avery asked Lt. Gary if he could discuss her situation with Chief Crouch, and Lt. Gary said he could. Councilman Avery and Chief Crouch were involved at the time in a public disagreement over allegations of brutality by the Gadsden Police Department. Avery combined his concerns about Lt. Gary's situation with his other concerns about the Gadsden Police Department and placed those concerns in a letter to Chief Crouch. Avery also sent the letter to all members of the city council, the mayor, the local newspaper, and local radio stations.[1]
Chief Crouch drafted a reply to Avery's letter, the last paragraph of which read:
 "I . . . [instructed] . . . Capt. Jeff Wright to inform Lt. Gary that if she wanted to improve her chances of receiving a specialized assignment she would 1) demonstrate some commitment to the objectives and missions of the Department, 2) demonstrate that she had some capacity for work (something which I have seen very little of over the past 14 months), and 3) set a better example for her subordinates by staying out of the hair salon and nail salon while on duty. . . . And no, Robert, I do not have a problem with females or blacks. I do have a problem with non-productive, ineffective police personnel, regardless of their rank, gender or race. And I also have a problem with elected officials whose main form of exercise is jumping to unfounded conclusions and whose political leadership is based in divisiveness and dissension, regardless of their gender or race."
Before mailing the letter to Councilman Avery, Chief Crouch sent a draft of it to Mayor Steve Means and requested his opinion. Mayor Means crossed out the paragraph set out above and returned the draft to Chief Crouch. Chief Crouch nonetheless sent the letter, including the paragraph Mayor Means had deleted, to Councilman Avery, Mayor Means, the city council, the local newspaper, and local radio stations.
In response, Lt. Gary sued the City of Gadsden and Chief Crouch, alleging negligence against the City and alleging defamation and invasion of privacy against Chief Crouch. The City answered; Chief Crouch moved to dismiss, arguing that Lt. Gary had failed to state a claim upon which relief could be granted and that the statements made in the letter were not false and defamatory. The trial court denied Chief Crouch's motion to dismiss, and Chief Crouch answered the complaint, denying all allegations.
The City moved for a summary judgment. Lt. Gary filed a response in opposition to the motion that included Chief Crouch's deposition, with exhibits and a copy of the letter that is the basis of the complaint. The trial court held a hearing and granted the motion on November 30, 2001. Lt. Gary does not appeal the summary judgment for the City.
Chief Crouch moved for a summary judgment, supporting it with a brief and an evidentiary submission including Lt. Gary's deposition, Commander Jeff Wright's deposition, Avery's deposition, *Page 313 
and other evidence previously submitted by Lt. Gary. Lt. Gary filed a response in opposition to the motion. The trial court granted Chief Crouch's summary-judgment motion and entered a final judgment of dismissal. On January 24, 2002, Lt. Gary moved to alter, amend, or vacate the judgment and filed a motion for recusal, seeking to have the trial judge recuse himself. The trial court denied these motions, and Lt. Gary appeals.
Lt. Gary raises four issues on appeal: (1) whether the trial court erred in entering a summary judgment for Chief Crouch based on State-agent immunity; (2) whether Lt. Gary established by substantial evidence the publication of the allegedly defamatory statements so as to survive Chief Crouch's motion for a summary judgment; (3) whether publication was a required element of every type of invasion of privacy and whether Lt. Gary's invasion-of-privacy claim presented a genuine issue of material fact sufficient to withstand Chief Crouch's summary-judgment motion; and (4) whether the trial court erred in denying Lt. Gary's motion to alter, amend, or vacate the judgment and her motion seeking the trial judge's recusal.
Citing Williams v. City of Montgomery, 21 F. Supp.2d 1360 (M.D. Ala. 1998), and Ex parte City of Montgomery, 758 So.2d 565 (Ala. 1999), Lt. Gary first argues that the trial court erred in granting Chief Crouch peace-officer discretionary-function immunity under 6-5-338, Ala. Code 1975. That Code section provides that every peace officer "shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." As police chief, Chief Crouch qualifies as a peace officer. However, Lt. Gary argues that in this matter Chief Crouch should not be afforded the immunity in 6-5-338 because, she argues, he engaged in the complained-of behavior in bad faith, or with malice or wilfulness, citing Williams, supra, and Ex parte City of Montgomery, supra.
Chief Crouch argues that he exercised discretion in performing the tasks required by his job, and that he is, therefore, entitled to peace-officer immunity. Chief Crouch contends that his job as police chief requires the exercise of discretion in supervising police department employees, managing the police department, and representing the police department before the city council and the mayor. Chief Crouch argues that his letter to Councilman Avery was an exercise of a discretionary function of his job, because he is required to respond to requests from his superiors for information about the police department and, he argues, the city council is one of the superiors to whom he must report if requested.
Lt. Gary argues that Chief Crouch acted in bad faith by including in the letter comments about her work performance even after Mayor Means had edited those portions from the letter. She also argues that Chief Crouch acted in bad faith in sending the letter, which ostensibly concerned internal department personnel matters, not only to Avery but also to local media outlets and to city officials. Because Chief Crouch acted in bad faith, she argues, he is not entitled to peace-officer immunity afforded by 6-5-338, Ala. Code 1975.
In Ex parte City of Montgomery, we explained that, where a municipal police officer is engaged in a discretionary function with respect to the conduct complained of, he or she would be immune under 6-5-338, "unless his [or her] actions were conducted with willful or malicious intent or in bad faith." 758 So.2d at 570. Peace-officer immunity, like State-agent *Page 314 
immunity,[2] does not provide immunity from liability for the commission of an intentional tort, but only for negligence in the exercise of judgment. See Ex parte Turner, 840 So.2d 132, 136 (Ala. 2002)("'a State agent shall not be immune from civil liability in his or her personal capacity . . . (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'" (quoting Ex parte Cranman,792 So.2d 392, 405 (Ala. 2000)).
The trial court's order, however, does not indicate that it entered the summary judgment for Chief Crouch on the basis of peace-officer immunity. The order states:
 "[I]t is ordered, adjudged and decreed that it is the opinion of the Court that no genuine issue of material fact is presented herein and therefore said Defendant's Motion for Summary Judgment is granted and he is hereby dismissed as a Defendant herein."
By reaching the merits of the summary-judgment motion, the trial court actually indicates that it did not extend immunity to Chief Crouch.
If a defendant who claims immunity is found not to be immune, he must defend the claims against him as any other defendant would. Chief Crouch did so in his motion for a summary judgment, arguing defenses to each of Lt. Gary's claims.
"We review a summary judgment de novo. Alabama Ins. Guar. Ass'n v. Southern Alloy Corp., 782 So.2d 203 (Ala. 2000). We apply the same standard of review as the trial court in determining whether the evidence presented to the trial court demonstrated the existence of a genuine issue of material fact. Jefferson County Comm'n v. ECO Preservation Servs., L.L.C., 788 So.2d 121 (Ala. 2000) (quoting Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988)). A summary judgment is proper where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala.R.Civ.P. See Ex parte General Motors Corp., 769 So.2d 903 (Ala. 1999), and Lawson State Comm. College v. First Continental Leasing Corp., 529 So.2d 926 (Ala. 1988)."
Northwest Florida Truss, Inc. v. Baldwin County Comm'n, 782 So.2d 274,276 (Ala. 2000). Once the movant for a summary judgment makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794,797-98 (Ala. 1989). Evidence creating a genuine issue of material fact must be substantial; evidence is "substantial" if it is "of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
Lt. Gary first argues that Chief Crouch's letter constituted defamation. We consider each element of defamation to *Page 315 
determine whether Lt. Gary has created a genuine issue of material fact sufficient to withstand Chief Crouch's properly supported motion for a summary judgment.
 "To establish a prima facie case of defamation, the plaintiff must show [1] that the defendant was at least negligent, see Mead Corp. v. Hicks, 448 So.2d 308
(Ala. 1983); Restatement (Second) of Torts 558, 580B (1977), [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, Restatement (Second) of Torts 558, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod). Restatement (Second) of Torts 558; see also Albert Miller Co. v. Corte, 107 F.2d 432 (5th Cir. 1939), cert. denied, Corte v. Albert Miller 
Co., 309 U.S. 688, 60 S.Ct. 890, 84 L.Ed. 1031
(1940)."
Nelson v. Lapeyrouse Grain Corp., 534 So.2d 1085, 1091 (Ala. 1988). Chief Crouch concedes that the statements in his letter were made intentionally; therefore, under the circumstances of this case Lt. Gary has created a genuine issue of material fact on the first element of defamation, that in making the statement Chief Crouch was at least negligent.
The second element is publication to another. "A plaintiff usually satisfies the publication element by proof of communication of the defamatory matter to someone other than himself. W. Prosser, The Law of Torts 113, at 776 (4th ed. 1971)." K-Mart Corp. v. Pendergrass,494 So.2d 600, 602 (Ala. 1986). Lt. Gary alleges that the letter was published to local media outlets and to Councilman Avery. Chief Crouch argues that Lt. Gary did not place evidence before the trial court that definitively indicates that the local radio stations and the local newspaper to whom he admittedly sent copies of the letter actually received and understood the letter. While Lt. Gary and Councilman Avery testified in their depositions that the information in the letter had been discussed on local radio programs, they could not say whether that discussion occurred before or after Lt. Gary filed this action against Chief Crouch, and, therefore, were unable to say whether the fact that the radio stations had knowledge of the letter stemmed from the public record of this action or from Chief Crouch's letter. However, Chief Crouch specifically stated in his deposition that it was his intention to send the letter to every outlet listed in the "cc" section at the bottom of his letter, which included the city council members other than Councilman Avery, the local newspaper, and various radio stations. We conclude that Lt. Gary has created a genuine issue of material fact as to whether Chief Crouch published the statements about her to third parties.
The third element is that the statement be false and defamatory. Chief Crouch argues that the statements he made about Lt. Gary were not false, and that, therefore, they were not defamatory. He bases this argument on information he purports came from Cmdr. Wright; however, Cmdr. Wright's deposition testimony states at best that Cmdr. Wright knew that Lt. Gary had gone to an appointment at a hair salon once during her lunch hour, but that she asked his permission for that visit and he gave it to her. Cmdr. Wright denies having complained to Chief Crouch that Lt. Gary's visits to the salons while she was on duty were a persistent problem, as Chief Crouch argues in his brief to this Court, and he also confirmed that male officers also got haircuts while they were on duty. Lt. Gary testified in her deposition that she had not received any reprimands while Chief Crouch was chief of *Page 316 
police,[3] and that she had received good performance reviews during the time Chief Crouch had been with the Gadsden Police Department. These conflicting allegations create a genuine issue of material fact regarding the truthfulness of Chief Crouch's allegations about Lt. Gary in the letter. Lt. Gary has, therefore, presented sufficient evidence indicating that the statements in the letter are false and defamatory to avoid a summary judgment.
The fourth element is that the statements concern the plaintiff. Chief Crouch concedes that the statements concerned Lt. Gary.
Finally, Lt. Gary must show damage. Chief Crouch's written comments regarding Lt. Gary's job performance, her work ethic, and her alleged dereliction of duty are presumed to damage her reputation and are actionable per se.
 "In cases of libel, if the language used exposes the plaintiff to public ridicule or contempt, though it does not embody an accusation of crime, the law presumes damage to the reputation, and pronounces it actionable per se."
Marion v. Davis, 217 Ala. 16, 18, 114 So. 357, 359 (1927) (citations omitted), cited with approval in Blevins v. W.F. Barnes Corp.,768 So.2d 386 (Ala.Civ.App. 1999); see also Gaither v. Advertiser Co.,102 Ala. 458, 14 So. 788 (1894).[4] Lt. Gary has at least created a genuine issue of material fact as to whether the following statements in the letter exposed her to public ridicule or contempt and therefore are actionable per se: that in the performance of her professional responsibilities she needed to 1) "demonstrate some commitment to the objectives and missions of the Department, 2) demonstrate that she had some capacity for work . . ., and 3) set a better example for her subordinates by staying out of the hair salon and nail salon while on duty." Thus, Lt. Gary has at least created a genuine issue of material fact as to each element of defamation as to which the parties are in dispute.
Chief Crouch asserts that he is, nonetheless, protected from liability because, he argues, the letter to Councilman Avery, who confirmed that he received and understood the letter, was a privileged communication. Chief Crouch argues that Councilman Avery's original letter to him inquiring into Lt. Gary's situation required a response from Chief Crouch and required that he respond to all parties to whom Councilman Avery sent his original query.
 "'"'Where a party makes a communication, and such communication is prompted by duty owed either to the public or to a third party, or the communication is one in which the party has an interest, and it is made to another having a corresponding interest, the communication is privileged, if made in good faith and without actual malice.'" . . .
 "'Willis v. Demopolis Nursing Home, Inc., 336 So.2d 1117 (Ala. 1976), quoting Berry v. City of New York Ins. Co., 210 Ala. 369, 98 So. 290
(1923).'
"Fulton v. Advertiser Co., 388 So.2d 533, 537 (Ala. 1980)." *Page 317 
Barnett v. Mobile County Personnel Bd., 536 So.2d 46, 53 (Ala. 1988). Chief Crouch's only support for his argument that he had a duty to respond to Councilman Avery's letter is his contention that his position required him to respond to requests for information from city council members. Councilman Avery's letter did not request specific details of Lt. Gary's work performance or Chief Crouch's opinion of that performance. The evidence before the trial court indicated that the mayor suggested to Chief Crouch, by his editing of the letter, that Chief Crouch remove the very portion of the letter Lt. Gary claims is defamatory and that Chief Crouch did not remove that language.
Chief Crouch argues that to survive his summary-judgment motion Lt. Gary must show that his statements were not made in good faith and that they were made with actual malice.
 "'[S]ince the privilege under consideration is merely a qualified one, it is subject to the general rules . . . limiting qualified privileged communications; and there is no privilege where the communication is actuated by express or actual malice, and the privilege may be lost if the publication goes beyond what the occasion requires.'"
Barnett v. Mobile County Personnel Bd., 536 So.2d at 53. Thus, even if we accept the argument that Chief Crouch had a duty to respond to Councilman Avery's letter, that duty does not immunize him from his decision to send the letter to local media outlets. "[T]he privilege may be lost if the publication goes beyond what the occasion requires," and Chief Crouch's mailing of the letter to the parties to whom he mailed it at least raises a genuine issue of material fact as to whether Chief Crouch's publication of the letter goes beyond what the occasion required.
This Court has also stated that "common law malice in its traditional sense 'may be shown by evidence of previous ill will, hostility, threats, rivalry, other actions, former libels or slanders, and the like . . . or by the violence of the defendant's language, the mode and extent of publication, and the like.' Fulton [v. Advertiser Co.], 388 So.2d [533] at 538 [(Ala. 1980)]." Barnett v. Mobile County Personnel Bd., 536 So.2d at 54. Chief Crouch's discussion in the letter of Lt. Gary's performance appears to go beyond what was necessary to respond to Councilman Avery's request for information. Chief Crouch's decision to send the letter unedited, leaving in the paragraph critical of Lt. Gary, and to send the letter to the people to whom he mailed it suggest malice and raise a genuine issue of material fact as to whether Chief Crouch made the statements in the letter about Lt. Gary with actual malice so that they are, therefore, not within the privilege. Lt. Gary created genuine issues of material fact as to all the elements of defamation; therefore, the trial court erred in entering a summary judgment for Chief Crouch on Lt. Gary's defamation claim.
Lt. Gary also argues that the trial court erred in entering a summary judgment for Chief Crouch on her invasion-of-privacy claim. Lt. Gary argues that Chief Crouch invaded her privacy under the theories of "'false light' invasion of privacy" and of publication of matters that constitutes "invasive conduct that violates the ordinary decency." (Lt. Gary's brief at p. 32.) Chief Crouch counters that Lt. Gary made these matters public by communicating to Councilman Avery her problem with Chief Crouch's refusal to allow her to "bump" a less senior officer and by filing a complaint against Chief Crouch with the Civil Service Board of the City of Gadsden based on Chief Crouch's letter, thereby *Page 318 
herself making the letter a matter of public record.
We consider whether Lt. Gary created a genuine issue of material fact as to whether the letter constitutes an invasion of privacy under Alabama law.
"The general nature of the right of privacy is described in 41 Am.Jur. p. 925. It has been defined 'as the right of a person to be free from unwarranted publicity' or 'the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.' 41 Am.Jur. p. 925; 54 C.J. p. 816. Its violation is a tort. And while its violation often assumes a form similar to libel, there are differences. For example 'in actions for infringement of the right of privacy, truth is not a defense and it is never necessary to allege or prove special damages.' 41 Am.Jur. p. 925; 138 A.L.R. pages 47, 48; 168 A.L.R. page 452."
Smith v. Doss, 251 Ala. 250, 252-53, 37 So.2d 118, 120 (1948). A more recent explanation of this tort is that it
 "consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use."
Phillips v. Smalley Maint. Servs., Inc., 435 So.2d 705, 708 (Ala. 1983) (footnote omitted).
Lt. Gary argues to this Court that her claim against Chief Crouch is based on the theories of (1) false-light invasion of privacy and (2) "invasive conduct that violates the ordinary decency." She argues that Phillips stands for the proposition that publication is not an element of the tort of invasion of privacy if that tort is committed by means of what she terms "invasive conduct that violates the ordinary decency." Lt. Gary impermissibly confounds two different types of invasion of privacy, mixing intrusion on her seclusion with publicity that violates "the ordinary decency." Phillips states that publication is not an element where one alleges an invasion of privacy by means of intrusion on seclusion, and that the act of intruding on private issues can be sufficient to justify a finding of invasion of privacy on that ground, without any publication to others of anything learned through the intrusion. 435 So.2d at 709.
Lt. Gary has made no showing that Chief Crouch has intruded on her seclusion, because she has made no showing that he sought or obtained any private information about her, or that he intruded upon her "physical solitude or seclusion" by seeking any information that he did not properly have access to through his role as her supervisor in the police department.[5] Lt. Gary has, therefore, created no genuine issue of material fact as to whether Chief Crouch intruded upon her seclusion.[6] *Page 319 
Lt. Gary also argues that Chief Crouch committed the tort of invasion of privacy by placing her in a false light. The Restatement (Second) of Torts 652E (1977) and the comments to that section define false-light invasion of privacy as follows:
 "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and "(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."
See also Schifano v. Greene County Greyhound Park, Inc., 624 So.2d 178,180 (Ala. 1993).
We cannot reasonably conclude, from the evidence Lt. Gary presented in opposition to Chief Crouch's summary-judgment motion, that before Lt. Gary made Chief Crouch's letter a matter of public record, Chief Crouch had given publicity[7] to facts that placed Lt. Gary in a false light that "would be highly offensive to a reasonable person." Councilman Avery was asked at his deposition:
 "[Chief Crouch's attorney:] Have you ever seen this memo republished in the newspaper or any part of it republished in the newspaper?
"Avery: I don't know.
 "[Chief Crouch's attorney:] Have you ever heard this memo read on the radio, or any portions of it read?
"Avery: Yeah. I think it was discussed on radio stations.
 "[Chief Crouch's attorney:] I don't mean discussed; I mean did you ever hear it read, any portions of it read?
 "Avery: Not the whole thing. I'm sure some of it out of — it was discussed. I don't know if it was read, actually read.
 "[Chief Crouch's attorney:] On what radio station did you hear it?
 "Avery: If I remember correctly, it was on 'GAD and WMGJ. There was some discussion about it." *Page 320 
Thus, Councilman Avery's testimony was only that he had heard some, not all, of the contents of the letter discussed on the radio, and he did not state what content was discussed; therefore, Lt. Gary has not produced substantial evidence creating a genuine issue of material fact as to whether she was placed in a false light that "would be highly offensive to a reasonable person."
We, therefore, conclude that the trial court did not err in granting Chief Crouch's summary-judgment motion as to Lt. Gary's invasion-of-privacy claim.
We turn, finally, to Lt. Gary's motion for the recusal of the trial judge, made after the trial court entered a summary judgment in favor of Chief Crouch. Lt. Gary argues that the trial judge is the brother of a city councilman, that the city council member in question was a friend of Chief Crouch's, and that, therefore, the judge was required to recuse himself from hearing a case, such as Lt. Gary's, involving claims against Chief Crouch. We presume that a judge is qualified and unbiased; one who alleges otherwise and seeks a judge's recusal has the burden of proving the grounds for the recusal. McMurphy v. State, 455 So.2d 924, 929
(Ala.Crim.App. 1984). Lt. Gary moved for the judge's recusal under Canon 3.C.(1) of the Canons of Judicial Ethics, which requires a judge to recuse himself or herself in a case in which the judge's "impartiality might reasonably be questioned." Lt. Gary, relying on Councilman Avery's testimony, claims that the judge's brother spoke to the city council about Lt. Gary's "bad habits," and that the judge's brother told the city council that he had received his information from Chief Crouch. The trial judge, however, is not accountable for his brother's actions before the city council, and Lt. Gary has not presented any reason to believe that the trial judge is under the sway of his brother.[8] We, therefore, find that Lt. Gary has not demonstrated that the trial judge should recuse himself from this case.
Therefore, we affirm the summary judgment for Chief Crouch on Lt. Gary's invasion-of-privacy claim and we affirm the trial court's denial of the motion seeking his recusal; we reverse the summary judgment for Chief Crouch on Lt. Gary's defamation claim; and we remand the case for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., recuses himself.
[1] As it related to Lt. Gary, the letter stated, in part:
 "[D]o you have a problem with females, or do you have a problem with blacks? It's obvious that you have some type of problem, based on the fact that Lt. Gary was bumped off her job due to length of service, and yet you won't let her bump someone else for the same reason. I hope my assumptions are wrong and I'm waiting for your reply. . . ."
[2] The test for State-agent immunity, as discussed in Ex parte Cranman, 792 So.2d 392 (Ala. 2000), and adopted by a majority of this Court in Ex parte Butts, withholds immunity from State agents acting in their personal capacity, "'when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'" Ex parte Butts,775 So.2d 173, 178 (Ala. 2000) (quoting Cranman, 792 So.2d at 405).
[3] Lt. Gary does discuss a warning she received when she allowed her child to ride in her patrol car, but she said in her deposition that she was not formally reprimanded for having done so.
[4] "'Words are actionable which directly tend to the prejudice of any one in his office, profession, trade, or business, in any lawful employment by which he may gain his livelihood.'" Gaither,102 Ala. at 463, 14 So. at 789 (quoting Ostrom v. Calkins, 5 Wend. 263 (N.Y. 1830)).
[5] Phillips presented an example of invasion of privacy by means of intrusion upon seclusion; in that case a supervisor repeatedly demanded that a woman under his supervision grant him sexual favors and repeatedly inquired as to her private sexual activities with her husband. Phillips, 435 So.2d at 707.
[6] If Lt. Gary intended to argue to this Court that Chief Crouch invaded her privacy through publicity that violates ordinary decency, then a mere showing of publication is not sufficient. Publicity is a concept more difficult to prove than publication. In Ex parte Birmingham News, 778 So.2d 814, 818 (Ala. 2000), this Court adopted the definition of "publicity" from Comment a to 652D of the Restatement (Second) of Torts, which defines publicity as
 "making a 'matter . . . public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.' See Johnston [v. Fuller], 706 So.2d [700] at 703 [(Ala. 1997)]. 'Publication,' on the other hand, 'is a word of art, which includes any communication by the defendant to a third person.' Restatement (Second) of Torts 652D cmt. a; Johnston, 706 So.2d at 703. If a person has given 'publicity' to a matter, then the communication is sure to reach the public. Restatement (Second) of Torts 652D cmt. a; Johnston, 706 So.2d at 703. Comment a adds:
 "'Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term. . . .'"
778 So.2d at 818. While Lt. Gary has created a genuine issue of material fact on the issue of publication as that term is used in the definition of defamation by libel, she has failed to provide sufficient evidence to create a genuine issue of material fact with regard to "publicity" as that term is defined in the caselaw on the tort of invasion of privacy.
[7] See note 6, supra.
[8] We do note that the trial judge in fact denied Chief Crouch's initial motion to dismiss.