[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 241 
Regions Bank ("Regions") appeals from a judgment entered on a jury verdict in favor of Amelia Kay Plott and James Edward Plott in the Plotts' action against Regions alleging invasion of privacy. We dismiss the appeal in part; reverse in part; and remand.
 I. Factual Background
The dispositive facts are undisputed. The underlying dispute arises out of the theft of 200 successively numbered checks bearing the Plotts' names and the number of their joint checking account at Regions' branch bank in Bessemer. The Plotts first learned of the theft on November 5, 1998, after three unidentified individuals attempted unsuccessfully to forge Mrs. Plott's name on one of the checks at a Wal-Mart discount department store in Gardendale.
That same day, the Plotts reported the theft to the Jefferson County Sheriff's Department, and Mrs. Plott visited Regions. At Regions, she reported the theft to a customer-service representative, who placed a "no-debit hold" on the account to prevent the payment of any forged instrument. On November 16, 1998, after all checks written by the Plotts on the frozen account had been presented for payment, Regions closed that account.
Meanwhile, the thieves were writing checks in various Southeastern states, including Mississippi, Alabama, Georgia, and North Carolina, and forging the Plotts' names. In a few instances, the thieves altered the account number on a check. In all, at least 130 forged checks were presented for payment on the frozen account. Those checks were returned to the presenting banks, and, in turn, to the merchants that had accepted them, stamped (1) "refer to maker," (2) "account closed," or (3) "account not found." Additionally, two checks were returned stamped "insufficient funds."
When each check was returned, its holder contacted the Plotts by telephone, by mail, or by both, seeking payment. When the Plotts would explain that the check was forged, many of the merchants requested an affidavit of forgery. On November 20, 1998, Mrs. Plott went to Regions and "begged them to give" her a blank affidavit, which she intended to complete for each merchant who had requested an affidavit of forgery. Regions refused to do so, and the Plotts eventually procured a forged-signature-affidavit form from another source. After they had procured the affidavit, the Plotts sent an affidavit and a copy of the sheriff's report of *Page 242 
the theft in response to every payment request. However, the affidavit often failed to satisfy the holder or to end the demand for payment. The Plotts continued to receive demands by telephone and mail from merchants and collection agencies, threatening legal action and criminal prosecution. Although the Plotts were never arrested in connection with the forged checks, warrants were issued for the arrest of Mrs. Plott in Baldwin County, Limestone County, and Madison County. Additionally, many of the merchants referred the matter to credit bureaus and credit-reporting agencies. As a result, the Plotts' credit rating was adversely affected.
On August 6, 1999, the Plotts sued Regions and others. The complaint contained a count alleging "invasion of privacy," averring that the defendants "invaded the [Plotts'] privacy by placing [them] in a false, but not necessarily defamatory, position in the public eye" (hereinafter "false light"). The complaint sought compensation for (1) emotional distress, (2) damage to "credit and financial standing," and (3) lost time and inconvenience from the interruption of their ordinary business affairs, which included the necessity of "attempt[ing] to clear their credit record, [responding] to arrest warrants, [changing] their bank accounts, [and dealing] with credit agencies, attorneys and merchants."
The cause was tried before a jury on claims against Regions alleging an invasion of the right of privacy.[1] At the close of the Plotts' case-in-chief, Regions moved for a judgment as a matter of law ("JML"), stating, in pertinent part:
 "Regions Bank moves for a[JML] on the [Plotts'] claim for the invasion of privacy and the mental anguish damages and the punitive damages that are alleged to have resulted from the alleged invasion of privacy. As I understand the [Plotts'] complaint, they seek recovery under two of the four prongs that constitute an invasion of privacy under Alabama law. The first one is called the intrusion into physical solitude prong. And the second one that they argue is putting somebody in a [false light]. Those are the only two under which they are traveling.
". . . .
 "[In the first claim], we are looking for a prying, a snooping, an intrusion into physical solitude, a poking of the nose where it doesn't belong. And we have absolutely nothing of that nature here. In addition to that, we don't have any abrupt, offensive, objectionable prying.
". . . .
 "So, we believe that the [Plotts] do not have sufficient evidence that would allow a reasonable jury to consider and return a verdict on the wrongful intrusion into physical solitude and the seclusion prong of the invasion of privacy.
 "The other prong, your Honor, as I mentioned is putting the [Plotts] in a false position in the public eye. . . . And a key element of this particular prong of the invasion-of-privacy tort, is that the matter must be made public or must have been communicated to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.
". . . .
 "The mere stamping of the checks and in the manner that they were stamped, in accordance with the bank's procedures, *Page 243 
does not even remotely amount to putting the [Plotts] in a false light before the public. . . ."
(Emphasis added.) Regions renewed this motion at the close of all the evidence. The trial court denied Regions' motion for a JML.
During the jury charge that followed, the trial court told the jury that the Plotts were claiming damages "for the violation of his and her right of privacy by intrusion upon [their] physical solitude or seclusion" (hereinafter "intrusion on seclusion") and for putting them "in a false but not necessarily defamatory position in the public eye." The trial court then charged the jury on the substantive elements of the false-light claim, but did not charge the jury on the claim of intrusion on seclusion.
At the close of the jury instructions, the trial court asked:
 "Q. [By the court]: Objections to my charge on the part of the [Plotts]?
 "A. [By counsel for the Plotts]: We have none, your Honor."
(Emphasis added.)
The jury returned a general verdict in favor of Mrs. Plott for $70,000 in compensatory damages and in favor of Mr. Plott for $15,000 in compensatory damages. The trial court entered a judgment on that verdict. Regions then filed a "renewed motion for [JML], or in the alternative, motion for new trial and motion for remittitur." That motion was denied by operation of law, pursuant to Ala. R. Civ. P. 59.1, and Regions appealed. On appeal, Regions contends that the trial court erred in denying its motion for a JML.
 II. Invasion of Privacy
It is well established that false light and intrusion on seclusion constitute distinct theories of recovery for the tort of invasion of privacy. This Court has stated:
 "`It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.'"
Butler v. Town of Argo, 871 So.2d 1, 12 (Ala. 2003) (quotingJohnston v. Fuller, 706 So.2d 700, 701 (Ala. 1997)). "Although all of these claims concern, in the abstract, the concept of being left alone, each tort has distinct elements and establishes a separate interest that may be invaded." Doe v. High-TechInst., Inc., 972 P.2d 1060, 1065 (Colo.Ct.App. 1998); see also Nathan E. Ray, Note, Let There Be False Light: Resisting theGrowing Trend Against an Important Tort, 84 Minn. L.Rev. 713, 718 (2000).
Our standard of review of a ruling on a motion for a JML is well established:
 "`[T]he Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present "substantial evidence" in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has *Page 244 
produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala. 1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992).'"
Johnson v. Stewart, 854 So.2d 544, 546-47 (Ala. 2002) (quotingDelchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala. 1999)). Applying these principles, we first address Regions' argument that it was entitled to a JML on the false-light claim.
 A. False-Light Claim
Regarding the elements of a false-light claim, this Court has held:
 "`"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
 "`"(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
 "`"(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."'"
Butler v. Town of Argo, 871 So.2d at 12 (quoting Schifano v.Greene County Greyhound Park, Inc., 624 So.2d 178, 180 (Ala. 1993), quoting in turn Restatement (Second) of Torts § 652E (1977)).
"A false-light claim does not require that the information made public be private," but it does require that "the information . . . be false." 871 So.2d at 12. See Restatement (Second) ofTorts § 652E, cmt. a. (1977). Thus, falsity is the sine quanon of a false-light claim. Moreover, unlike defamation, truth
is not an affirmative defense to a false-light claim; rather, "falsity" is an element of the plaintiff's claim, on which the plaintiff bears the burden of proof. Ray, Let There be FalseLight, 84 Minn. L.Rev. at 736 ("false light plaintiffs therefore bear [a] heavier burden [than defamation plaintiffs] because they must make an affirmative showing of falsity rather than leaving it to defendants to justify the offensive statement").
Regions argues here, as it did in the trial court, that it did not give publicity to any false information regarding the Plotts. More specifically, Regions contends that it did nothing but return the forged checks to the presenting banks, stamped (1) "refer to maker," (2) "account not found," (3) "account closed," or (4) "insufficient funds." Regions insists that the checks returned (1) "refer to maker," (2) "account not found," and (3) "account closed" simply "did not contain any false information." Regions' brief, at 44. We agree.
 1. "Refer to maker"
The stamp "refer to maker" is not a "statement" in any conventional sense. "Statement" is ordinarily understood as "an allegation," or "a declaration of matters of fact." Black'sLaw Dictionary 1408 (6th ed. 1990) (emphasis added). In some contexts, a "statement" may be "(1) an oral or writtenassertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Ala. R. Evid. 801(a) (emphasis added). "Refer to maker" on the face of an instrument does not purport to assert any fact or contain any information. Therefore, it is insusceptible of truth or falsity. *Page 245 
 2. "Account not found"
The stamp "account not found" on the returned forged checks was a true statement. Regions used that stamp only on those of the Plotts' checks on which the account number had been altered by the thieves.[2] Consequently, the account numbers on those returned checks did not, in fact, match the number of the frozen account or any other account at Regions.
 3. "Account closed"
Similarly, the stamp "account closed" was a true statement. Regions closed the Plotts' account on November 16, 1998. By that date, all the bona fide checks had been presented for payment. The forged checks stamped "account closed" were returned after the Plotts' account had, in fact, been closed. Thus, as to the stamps (1) "refer to maker," (2) "account not found," and (3) "account closed" on the forged checks returned to the presenting banks, the Plotts failed to demonstrate the element of falsity necessary to support a false-light claim.
 4. "Insufficient funds"
It is undisputed that only two of the forged checks were returned to the presenting bank stamped "insufficient funds." Those checks were the first two checks returned after the account was frozen on November 5, 1998, and were returned on that date. Assuming, for the sake of argument, that this stamp provided false information regarding the Plotts' account to two presenting banks and two merchants, the "giving publicity" element of the false-light claim is not satisfied.
In the context of a false-light claim, "giving publicity" is "making a `matter . . . public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of publicknowledge.'" Ex parte Birmingham News, Inc., 778 So.2d 814,818 (Ala. 2000) (quoting Restatement (Second) of Torts § 652D, cmt. a (1977) (emphasis added)). "Publicity is a concept more difficult to prove than [mere] publication," which is an element of a defamation claim. Gary v. Crouch, 867 So.2d 310, 318
n. 6 (Ala. 2003). The "publicity" element is not satisfied by the "`communicat[ion of] a fact . . . to a single person or evento a small group of persons.'" Birmingham News,778 So.2d at 818 (quoting Restatement (Second) of Torts § 652D, cmt. a (1977) (emphasis added in Birmingham News; some emphasis omitted)). We hold that the return by a payor bank of one check stamped "insufficient funds" to two presenting banks and two merchants does not "giv[e] publicity to a matter concerning another" within the meaning of the "publicity" element of a false-light claim.
To be sure, the Plotts argue:
 "[E]very time Regions Bank returned one of the forged checks stamped [with one of the four stamps discussed above], they were placing the plaintiffs in the false light of being bad check writers who were writing checks with insufficient funds or on closed accounts, neither of which was true. They were placed in the false light of committing criminal offenses of writing bad checks pursuant to Alabama's Bad Check Act."
Plotts' brief, at 33. In their complaint, the Plotts aver that Regions "failed to report to the entities who submitted checks on [their] previous account and which were returned . . . that the checks were not *Page 246 
written by the [Plotts]," and that Regions "failed to take the necessary steps and procedures to correct the credit record."
Regions, however, correctly points out that the Plotts have "offered no evidence that the return of the checks was wrongful or that Regions did anything contrary to the provisions of Alabama's Uniform Commercial Code — Bank Deposits and Collections, Ala. Code § 7-4-101, et seq. (1975), Federal Reserve regulations, operating circulars, clearing house rules, [or] circulars," Regions' brief, at 28, or that it performed any operation that it was not legally entitled to perform. Indeed, the Plotts fail to cite us to a source for the duty it alleges Regions had "to report to the entities who submitted checks on [their frozen] account" that the checks had not been written by the Plotts. The account was frozen at the instigation of the Plotts. It is undisputed that the Plotts never intended to honor, or for Regions to pay, any of the forged checks. The Plotts knew that the checks would be returned to the presenting banks and merchants. They authorized Regions to return the checks, and, for all that appears in the record, never suggested to Regions how to stamp the checks, or what, in particular, it should do "to correct the [Plotts'] credit record."
The Plotts also criticize Regions for failing to give Mrs. Plott an affidavit of forgery, after she "begged" for one. However, they do not explain how an affidavit supplied by Regions would have produced a result different from the affidavit they procured from another source and subsequently sent to every holder of a forged check. In short, the Plotts have failed to produce substantial evidence in support of their false-light claim against Regions. The trial court erred, therefore, in refusing to enter a JML in favor of Regions on that claim.
 B. Intrusion-on-Seclusion Claim
Regions also argues that the trial court erred in denying its motion for a JML as to the claim of intrusion on seclusion. However, this argument is moot. The trial court denied Regions' motion for a JML as to both the false-light claim and the intrusion-on-seclusion claim and mentioned to the jury that the Plotts were seeking compensation under a claim of intrusion on seclusion. However, it instructed the jury only on the elements of the false-light claim. The Plotts expressly acquiesced in the charge, which contained no substantive instructions on the intrusion-on-seclusion claim.
It is well established that "`[u]nchallenged jury instructions become the law of the case.'" Alabama Dep't of Transp. v. LandEnergy, Ltd., 886 So.2d 787, 795 (Ala. 2004) (quoting Clark v.Black, 630 So.2d 1012, 1017 (Ala. 1993)); BIC Corp. v. Bean,669 So.2d 840, 844 (Ala. 1995). It is also a sound principle that juries are authorized to return verdicts only as to claims on which they have been instructed. Alpha Coal Co. v. NationalCement Co., 420 So.2d 275 (Ala.Civ.App. 1982); Travelers Indem.Co. v. Capitol City Haulers, Inc., 393 So.2d 1012 (Ala.Civ.App. 1980). "Argument of counsel to a jury does not replace the court's charge to the jury. . . . The jury cannot be leftwithout a rudder as to what [it is] called upon to decide and as to the law applicable thereto." 393 So.2d at 1015 (emphasis added).
It hardly bears repeating that "[s]ubmitting [proposed jury] instructions is not sufficient to preserve an error in failing to give those instructions." Salazar v. City of Chicago,940 F.2d 233, 242 (7th Cir. 1991) (the plaintiff "waived [his] claim in the district court" by failing to object to the court's refusal to give his requested instructions; because the "court never instructed *Page 247 
the jury on [that claim], . . . the jury had no opportunity to decide it"). When the Plotts expressed their approval of the jury charge, which did not include instructions on their claim of intrusion on seclusion, they waived that claim, and the general verdict returned by the jury could not have been based on it. Because the claim was not included in the verdict, or in the judgment entered on that verdict, Regions' challenge to the denial of a JML as to that claim is moot. Therefore, to that extent, the appeal is dismissed.
 III. Summary
In summary, insofar as it challenges the denial of a motion for a JML on the claim of intrusion on seclusion, Regions' appeal is dismissed as moot. Insofar as it denied Regions' motion for a JML on the false-light claim, the judgment is reversed, and the cause is remanded for the entry of an order consistent with this opinion.
APPEAL DISMISSED AS MOOT IN PART; REVERSED IN PART; AND REMANDED.
SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., dissents.
HOUSTON, J., recuses himself.
[1] The claims against the other defendants were dismissed, either during or before trial. Therefore, the issues before this Court involve only the invasion-of-privacy claims against Regions.
[2] The record reflects that the thieves altered the account number, either by adding a "1" or by changing a "1" to a "9."